**No. 24-1202**

# United States Court of Appeals for the Federal Circuit

LONGITUDE LICENSING LTD.,
*Plaintiff-Appellant*,
v.

GOOGLE LLC,
*Defendant-Appellee.*

Appeal from the United States District Court for the Northern District of California in Case No. 3:23-cv-03046-VC, Hon. Vince Chhabria

**RESPONSE BRIEF OF APPELLEE GOOGLE LLC**

GINGER D. ANDERS
J. KAIN DAY
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Suite 500E
Washington, DC 20001
Telephone: (202) 220-1100

Email: ginger.anders@mto.com
kain.day@mto.com

*Counsel for Defendant-Appellee Google LLC*

March 25, 2024

**U.S. Patent No. 7,668,365, claims 5, 18, 19 and 32**

5. An image processing device that determines the main object which characterizes an image, the image processing device comprising:

> image data acquiring module that acquires image data which is data of the target image;
>
> image data analyzing module that segments the image data into a plurality of areas for analysis in terms of area units;
>
> position data acquiring module that acquires position data of the areas of the image data; and
>
> main object determining module that determines the main object using the acquired position data and the results of analysis;
>
> wherein each of the modules of the image processing device is executed by an integrated circuit.

18. An image processing device comprising:

> main object image data determining module that determines the main object image data corresponding to the main object characterizing the image;
>
> property acquiring module that acquires the properties of the determined main object image data;
>
> correction condition acquiring module that acquires correction conditions corresponding to the properties that have been acquired; and
>
> picture quality adjusting module that adjusts the picture quality of the main object image data using the acquired correction conditions;
>
> wherein each of the modules of the image processing device is executed by an integrated circuit.

19. An image processing device according to claim 18, wherein

> the correction conditions are correction standard values corresponding to the acquired properties, and
>
> the picture quality adjusting module adjusts the picture quality of the main object image data so as to eliminate or reduce the difference between the acquired property values and the correction standard values.

32. An image processing method comprising:

> determining the main object image data corresponding to the main object characterizing the image;
>
> acquiring the properties of the determined main object image data;
>
> acquiring correction conditions corresponding to the properties that have been acquired; and
>
> adjusting the picture quality of the main object image data using the acquired correction conditions;
>
> wherein each of the operations of the image processing method is executed by an integrated circuit.

**U.S. Patent No. 8,355,574, claim 3**

3. A method of image processing, the method comprising:

> determining a main object in an image generated by an image generating apparatus, wherein the main object includes at least a human face, and wherein the determining of the main object is implemented by determining whether the image includes the human face; and
>
> adjusting image quality of the main object using correction conditions corresponding to properties of the determined main object, wherein a parameter used in adjusting the image quality is a highlight, a shadow, brightness, contrast, color balance, or memory color, and
>
> wherein each operation of the method of image processing is executed by one of a personal computer, a printer, or a display device.

**U.S. Patent No. 7,454,056, claim 10**

10. An image processing device for executing color balance correction on image data of a photographed image, said image processing device comprising:

an image data acquisition module that acquires said image data:

a specific subject area determination module that determines a specific subject area in said photographed image, wherein said specific subject area contains a specific subject in said photographed image, and wherein said specific subject area determination module determines said specific subject area using pixel values of pixel data included in a target area for determination, and a position of said target area in said photographed image;

a specific subject characteristic value calculation module that calculates a specific subject characteristic value, wherein said specific subject characteristic value represents a characteristic of image data corresponding to said determined specific subject area;

a correction value calculation module that calculates a correction value for color balance correction using said calculated specific subject characteristic value and a preset characteristic target value; and

a correction execution module that executes said color balance correction on said image data using said calculated correction value.

**U.S. Patent No. 7,945,109, claim 1**

1. An image processing apparatus comprising:

a CPU, the CPU executing functions including

acquiring an image file, the image file including image data, shooting scene information, and location information of a person in the image data, and

increasing sharpness of an area in which the person is located and decreasing sharpness of an area in which the person is not located based on the acquired location information when the acquired shooting scene information indicates a portrait scene.

## CERTIFICATE OF INTEREST

Counsel for Google certifies the following:

1. The full name of every party represented by me is:

   Google LLC

2. The names of the real parties in interest represented by me are:

   None other than Google.

3. All parent corporations and any publicly held companies that own 10% or more of stock in the parties represented by me are:

   Alphabet Inc.; XXVI Holdings Inc.

4. The names of all law firms and the partners or associates that appeared for the parties now represented by me before the originating court or that are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

   Quinn Emanuel Urquhart & Sullivan, LLP: Melissa J. Bailey, Anastasia M. Fernands, Patrick Daniel Curran.

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal is:

   None.

6. Organizational Victims and Bankruptcy Cases: Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees) are not applicable because this is not a criminal or bankruptcy case. See Fed. Cir. R. 47.4(a)(6).

   N/A

DATED: March 25, 2024

By: /s/ *Ginger D. Anders*
Ginger D. Anders

# TABLE OF CONTENTS

**Page**


CERTIFICATE OF INTEREST ........ iv

STATEMENT OF RELATED CASES ........ 1

JURISDICTIONAL STATEMENT ........ 1

STATEMENT OF THE ISSUE ........ 1

INTRODUCTION ........ 2

STATEMENT OF THE CASE ........ 5

I. Background ........ 5

  A. U.S. Patent No. 7,668,365 (the ’365 patent) ........ 5

  B. U.S. Patent No. 8,355,574 (the ’574 patent) ........ 8

  C. U.S. Patent No. 7,454,056 (the ’056 patent) ........ 10

  D. U.S. Patent No. 7,945,109 (the ’109 patent) ........ 12

II. Procedural History ........ 14

SUMMARY OF THE ARGUMENT ........ 16

ARGUMENT ........ 18

I. Standard of Review ........ 18

II. Longitude’s Attempt to Reformulate the Section 101 Inquiry Should Be Rejected. ........ 19

III. At *Alice* Step One, the Asserted Claims Are Directed to Abstract Ideas. ........ 24

  A. Claim 32 is Directed to an Abstract Idea. ........ 27

    1. Claim 32 Is Framed in Entirely Functional Terms. ........ 27

    2. Claim 32 Recites Longstanding Human Activity. ........ 31

    3. Claim 32 Does Not Recite an Improvement to Computer Technology ........ 33

    4. Longitude’s Remaining Arguments as to Claim 32 Lack Merit. ........ 38

  B. Every Other Asserted Claim Is Similarly Directed to An Abstract Idea. ........ 39

# TABLE OF CONTENTS
## (Continued)

**Page**

IV. At *Alice* Step Two, the Asserted Claims Do Not Recite an Inventive Concept. ....... 52

A. Longitude Cannot Rely on the Abstract Idea Itself at Step Two. ....... 53

B. Longitude's Separate Arguments about Claim 1 of the '109 Patent Are Meritless. ....... 56

CONCLUSION ....... 58

CERTIFICATE OF COMPLIANCE ....... 59

CERTIFICATE OF SERVICE ....... 60

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adaptive Streaming Inc. v. Netflix, Inc.*,
836 F. App'x 900 (Fed. Cir. 2020) ........................................................25

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
620 F. App'x 934 (Fed. Cir. 2015) ........................................................40

*Alice Corp. v. CLS Bank Int'l*,
573 U.S. 208 (2014)........................................................................*passim*

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
915 F.3d 743 (Fed. Cir. 2019) ..............................................................44

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) ............................................................56

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ............................................24, 44, 52

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) ......................................................53, 56

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014) ............................................................48

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) .......................................19, 21, 23, 39

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
776 F.3d 1343 (Fed. Cir. 2014) ............................................................42

*CosmoKey Solutions GmbH & Co. KG v. Duo Security LLC*,
15 F.4th 1091 (Fed. Cir. 2021) ......................................................55, 56

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) ....................................................*passim*

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
955 F.3d 1317 (Fed. Cir. 2020) ............................................................32

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018) ....................................................50, 51

*In re Gopalan*,
809 F. App'x 942 (Fed. Cir. 2020) ....................................................47

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
60 F.4th 1349 (Fed. Cir. 2023) ....................................................*passim*

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
50 F.4th 1371 (Fed. Cir. 2022) ....................................................21, 22

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
850 F.3d 1332 (Fed. Cir. 2017) ....................................................*passim*

*Interval Licensing LLC v. AOL, Inc.*,
896 F.3d 1335 (Fed. Cir. 2018) ....................................................30, 47

*Mayo Collab. Servs. v. Prometheus Lab'ys, Inc.*,
566 U.S. 66 (2012) ....................................................48

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ....................................................36, 37, 38

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015) ....................................................22

*PersonalWeb Techs. LLC v. Google LLC*,
8 F.4th 1310 (Fed. Cir. 2021) ....................................................*passim*

*Plotagraph, Inc. v. Lightricks, Ltd.*,
2024 WL 223185 (Fed. Cir. Jan. 22, 2024) ....................................................33

*Realtime Data LLC v. Array Networks Inc.*,
2023 WL 4924814 (Fed. Cir. Aug. 2, 2023) ....................................................42

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017) ....................................................25, 30

# TABLE OF AUTHORITIES
# (Continued)

**Page(s)**

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
65 F.4th 698 (Fed. Cir. 2023) ........................................................... *passim*

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) ................................................ 24, 53, 58

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017) ............................................................... 58

*Synopsys, Inc. v. Mentor Graphics Corp.*,
839 F.3d 1138 (Fed. Cir. 2016) ............................................................. 22

*Tahara v. Matson Terminals, Inc.*,
511 F.3d 950 (9th Cir. 2007) ................................................................ 40

*In re TLI Commc'ns LLC Pat. Litig.*,
823 F.3d 607 (Fed. Cir. 2016) ............................................................... 21

*Trinity Info Media, LLC v. Covalent, Inc.*,
72 F.4th 1355 (Fed. Cir. 2023) ........................................................ *passim*

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) ....................................................... 21, 30

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
916 F.3d 1363 (Fed. Cir. 2019) ............................................................. 32

*Universal Secure Registry LLC v. Apple Inc.*,
10 F.4th 1342 (Fed. Cir. 2021) ........................................................ 37, 51

*Yu v. Apple Inc.*,
1 F.4th 1040 (Fed. Cir. 2021) ........................................................... *passim*

# TABLE OF AUTHORITIES
# (Continued)

**Page(s)**

**FEDERAL STATUTES**

28 U.S.C. § 1295(a)(1)....................1

28 U.S.C. § 1331....................1

28 U.S.C. § 1338(a)....................1

35 U.S.C. § 101....................*passim*

**FEDERAL RULES**

Fed. R. Civ. P. 12....................52

## STATEMENT OF RELATED CASES

Google LLC ("Google") is not aware of any other appeal in or from this civil action. Nor is Google aware of any case pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal.

## JURISDICTIONAL STATEMENT

Longitude Licensing Ltd. ("Longitude") appeals from a final judgment of the U.S. District Court for the Northern District of California, entered on November 15, 2023. Appx001. It noticed this appeal in a timely fashion on November 22, 2023. Appx311-312. The district court had jurisdiction over Longitude's patent-infringement suit under 28 U.S.C. §§ 1331, 1338(a). This Court has exclusive jurisdiction over the appeal under 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUE

Whether the district court correctly held that all claims in U.S. Patent Nos. 7,668,365; 8,355,574; 7,454,056; and 7,945,109 are directed to ineligible subject matter under 35 U.S.C. § 101.

## INTRODUCTION

The patent claims at issue in this case are patent ineligible under 35 U.S.C. § 101 because they recite the abstract idea of altering an image (such as a photograph) by adjusting image data based on the properties of the image's "main object"—its central focus.[1] Put in plain (and exemplary) terms, the patents describe taking a photograph of a person and, using a standard computer or camera, adjusting the brightness, color, or sharpness of the person's face. The claims are thus directed to a means of organizing and altering data using generic computer hardware—and they describe actions that photographers and artists have for centuries undertaken in their minds and with paintbrush and canvas. The patent claims contain no inventive concept that could transform them into a patent-eligible application. Every touchstone that this Court has laid down to guide the Section 101 inquiry points in the same direction: the claims are directed to ineligible subject matter. The Court should affirm.

At step one of the eligibility analysis, each asserted claim is directed to the same basic abstract idea of altering an image based on features of the image's main object. The claims are framed in entirely functional terms—a critical hallmark of abstractness under this Court's decisions. For instance, claim 32 of the '365 patent recites an "image processing method" with various functional steps, including

[1] U.S. Patent Nos. 7,668,365; 8,355,574; 7,454,056; 7,945,109.

"determining" the main object and its properties, "acquiring" "correction conditions," and "adjusting" the main object's data accordingly. Appx041. The other asserted claims are to the same effect. And because the claims are broadly functional, without any limits on *how* the stated results are achieved, the claims do little more than automate longstanding human activities—here, the actions of an artist wielding a paintbrush.

The functional nature of the claims disposes of Longitude's primary argument on appeal: that the claims are directed to technological improvements in computer functioning. Longitude asserts that computers "struggled to locate the image's subject" and that "processing techniques made mistakes" by adjusting an image's background rather than its main object. Principal Br. 5. That may be so, but the claims do not disclose solutions to those problems. Instead, they merely state, in functional terms, that the computer will accurately locate the image's subject and will make adjustments based on properties of that main object rather than the image more generally. That is the abstract idea itself, not any improvement in a computer's ability to function as a computer. Moreover, Longitude's attempts to identify technical elements of the purported inventions are unavailing: those details do not appear in the claims themselves, they are not related to the claimed improvements, and in all events, they do not amount to any improvement in computer functioning.

In sum, Longitude's own attempt to defend the claims confirms beyond any doubt that they are directed to an abstract idea.

At step two of the eligibility analysis, the patents' specifications establish that the claims contain no inventive concepts. The intrinsic record makes clear that the asserted claims merely apply conventional image-adjustment methods to alter images based on the main object in that image, rather than altering an image "across the board." No doubt for that reason, when pressed to identify the inventive concept in the claims, Longitude can only argue that the concept of altering an image based on its main object is new—but that is the *abstract idea*, not an innovative *addition* to the basic idea. It is well-established that the abstract idea itself cannot be the "something more" sufficient to transform a claimed abstract idea into a patent-eligible application. The allegations in Longitude's complaint are similarly deficient, merely reemphasizing the abstract idea itself while failing to present any facts showing that any step (or combination of steps) in the asserted claims is non-conventional.

At bottom, this is a particularly straightforward Section 101 analysis. The claims themselves and the patents' written descriptions establish that the claims are directed to an abstract idea. Longitude's complaint effectively confirms the ineligibility of its claims. The district court was correct to dismiss this infringement action, and this Court should affirm.

## STATEMENT OF THE CASE

### I. Background

In June 2023, Longitude sued Google in the U.S. District Court for the Northern District of California, alleging infringement of at least one claim in each of seven patents that, at a high level, relate to image-processing systems and methods. Appx119-250. Longitude alleged that several Google devices (e.g., Pixel smartphones) and Google applications (e.g., Photos and Snapseed) infringe. Appx125-126. Only four of those patents (the "asserted patents") are at issue in this appeal.[2]

#### A. U.S. Patent No. 7,668,365 (the '365 patent)

The '365 patent, entitled "Determination of [a] Main Object on Image and Improvement of Image Quality According to Main Object," discloses a purported "invention" that "relates to a technique that determines the main object characterizing an image, as well as a technique that adjusts the picture quality of the image data." Appx026 at 1:8-10. Rephrased in simpler terms, the '365 patent is focused on adjusting the image quality of the main object in a picture.

---

[2] The other three patents are not at issue because Longitude voluntarily dismissed its infringement claims based on those patents, without prejudice, after the district court granted Google's motion to dismiss with respect to the four patents at issue in this appeal. *See* Appx306-309.

The patent acknowledged that human "[u]sers" had already been adjusting "picture quality using retouching software." Appx026 at 1:14-15. Also, "various techniques" were available for "automatically adjusting picture quality" without the "need for user input." Appx026 at 1:15-19. But according to the '365 patent, prior-art techniques operated on the image "across the board," without considering "characteristics" of the "main object" in that image. Appx026 at 1:30-40. The claimed invention allegedly departs from this across-the-board methodology by adjusting the portion of the image that corresponds to its main object. Appx026 at 1:30-48; *cf.* Principal Br. 5.

Claim 32, which Longitude treats as its primary claim for analysis, is representative of the alleged invention. It claims:

> An image processing method comprising:
>
> > determining the main object image data corresponding to the main object characterizing the image;
> >
> > acquiring the properties of the determined main object image data;
> >
> > acquiring correction conditions corresponding to the properties that have been acquired; and
> >
> > adjusting the picture quality of the main object image data using the acquired correction conditions;
> >
> > wherein each of the operations of the image processing method is executed by an integrated circuit.

Appx041 at 32:23-33. The claim thus recites an "image processing method" with various functional steps—"determining," "acquiring," and "adjusting" data—that culminate in "adjusting the picture quality of [a] main object image data using the acquired correction conditions." Appx041 at 32:30-31. The claim does not explain how any of the steps are accomplished. And the "correction conditions" include any kind of "statistical values and color values" (for instance, brightness or contrast) that correspond to the similarly broad "properties" of the main object. Appx032 at 14:55-58. Thus, claim 32 covers virtually any method of adjusting the picture quality of a main object in an image, rather than in an across-the-board fashion. Longitude did not proffer below, and does not now proffer, any narrower interpretation of these limitations—referring only to *examples* that fall within the broad scope of these generic terms. *E.g.*, Principal Br. 6-8. And the method need only be performed on a generic "integrated circuit." Appx041 at 32:33. According to Longitude, the "crux" of the claimed invention is a "relation[ship]" between two broad data types: correction conditions and properties of a main object. Principal Br. 7-8.

Longitude's complaint provides a similar description of the '365 patent's claimed invention. *See* Appx129-134 (¶¶ 41-52). It distinguishes "prior systems," which "processed image data across the board," from the claimed "invention[]," which "process[es] the image data corresponding to a main object characterizing the digital image." Appx129 (¶ 42); *see also* Appx130-131 (¶¶ 45-46). That focus on

the main object is the alleged "improve[ment]" encapsulated by the '365 patent claims. *See* Appx129-130 (¶ 43); Appx132-133 (¶ 49). Longitude's complaint does not identify any new or specialized hardware or explain any way in which the claimed method improves the computer's functioning as a computer.

The '365 patent's other claims describe trivial variations on claim 32. Claim 5, for instance, relates to identifying the main object in the image, describing the generic steps of dividing an image into "areas" (e.g., a grid) and then using position data to identify the main object. *See* p. i, *supra* (reproducing claim 5). That idea, Longitude contends, is the focus of claim 5's "distinct" invention. *E.g.*, Principal Br. 11-12. The purpose, Longitude's complaint alleges, is to determine the image's main object in order to facilitate "editing the image based on those determinations." Appx131 (¶ 47). Other claims, such as claims 19 and 21, combine the object-identification process with the image-adjustment process. But every claim is ultimately aimed at "techniques for automatically adjusting picture quality" based on "the main object characterizing the image." *See* Appx026 at 1:20-29.

### B. U.S. Patent No. 8,355,574 (the '574 patent)

The '574 patent is a continuation of the '365 patent, and those patents share a title and written description. *See* Appx042 at (63). As a result, the '574 patent describes the same problem and same solution outlined above. Like the '365 patent,

the '574 patent's claimed "invention" focuses on adjusting image quality based on properties of the main object in that image. *See* Appx062 at 1:54-56.

Claim 3 is the only claim of the '574 patent that Longitude has asserted or discusses. Appx075 at 28:8-21; *cf.* Appx284 (treating claim 3 as representative in opposing dismissal). That claim is very similar to claim 32 of the '365 patent. It recites an image processing "method" that includes functional steps: "determining" and "adjusting" data. Appx075 at 28:8-21. Claim 3 does limit the "main object" identified to a "human face" and limits the "adjusting" step to certain well-known parameters (such as shadow or brightness), but it provides no specific limitations on how its method is to be performed. Nor is there any suggestion that human-face main objects or the recited parameters were non-conventional as of claim 3's priority date.

The complaint's description of the alleged "improvements" captured in claim 3 are almost identical to the improvements Longitude alleged when discussing claim 32. *Compare* Appx135 (¶ 54), *with* Appx129 (¶ 42). Claim 3 is allegedly "directed to improvements to image processing devices and operations that process digital image data corresponding to the main object of the image, specifically, a human face, to more accurately display the main object's appearance." Appx135 (¶ 54). And the complaint distinguishes "prior systems" that adjusted images "across the board." Appx135 (¶ 55).

### C. U.S. Patent No. 7,454,056 (the ’056 patent)

The ’056 patent, entitled “Color Correction Device, Color Correction Method, and Color Correction Program,” was filed a few weeks after the application that resulted in the ’365 patent. Appx077 at (22). It describes an “invention” directed at “image processing to execute color balance correction according to the subject and to improve the appearance of the subject in an image.” Appx085 at 1:38-42. Put more simply, the ’056 patent is also focused on the idea of identifying a main object (i.e., subject) and adjusting the quality (i.e., color correction) of the image based on properties of that object.

The patent explains that there were previously a number of “typical” color balance correction methods. Appx085 at 1:15-19. Each method “correct[ed] changes in color according to the type of light source during imaging,” in order to “reduce color seepage that occurs in images.” Appx085 at 1:11-15, 1:20-21. The alleged problem was that “using such conventional correction method[s],” which applied across the board, could end up making an “undesirable” change in the main object. Appx085 at 1:32-34. So the “invention” balances the image color based on the color of the subject, rather than balancing based on the color of the image as a whole. Appx085 at 1:40-41.

Claim 10 in the ’056 patent is quite similar to the claims summarized above. Appx092 at 16:32-56. It recites an “image processing device” with a number of

"module[s]" for performing functional steps. *Id.* The ultimate action is "execut[ing]" a "color balance correction" on "image data" using a value tied to the subject (i.e., main object) of an image. According to the patent, the alleged invention applies "publicly known" correction methods to an image, but it focuses on the main object in that image. *See* Appx089 at 9:43-51; Appx090 at 12:37-48; *cf.* Principal Br. 18 (relying on the publicly known process for a description of the claimed color-correction steps). Claim 10 requires identifying the main object using "pixel values" and a "target area," but the written description does not define these terms or suggest that they are unconventional ways of identifying a main object. *See* Appx086 at 3:24-34.

The complaint describes the claimed invention in similar terms. Appx140-145 (¶¶ 66-75). Longitude asserts that the "claimed inventions improve upon prior computing systems and operations that did not identify, analyze, and modify the data corresponding to the *subject* of a digital image, and instead considered and modified *all data* in an image." Appx140 (¶ 68). The complaint does not allege that any non-conventional hardware or software components are used; rather, the claims use ordinary data structures, such as pixels and position information. *See* Appx142 (¶ 71).

### D. U.S. Patent No. 7,945,109 (the ’109 patent)

The ’109 patent, entitled “Image Processing Based on Object Information,” was filed a few years after the other asserted patents. *See* Appx094 at (22), (63). It describes its alleged “invention” as an “image processing technique that uses major object information of an image.” Appx104 at 1:14-15. Restated, that is the same idea discussed above: processing an image based on its main-object data.

Claim 1, which Longitude has relied on here, recites an “image processing apparatus” that uses a “CPU” to perform three functions: “acquiring an image file,” “increasing sharpness” of part of the image, and “decreasing sharpness” of the remaining portions of the image. Appx110-111 at 14:62-15:5. The “image file” includes information about the “shooting scene” and “location” of a person in the image data. Appx111 at 15:5-10. The “increasing” step increases sharpness in the area containing the main object (i.e., a person), and the “decreasing” step decreases it elsewhere. Appx111 at 15:1-5.

The complaint echoes that description, alleging that claim 1 is “directed to [alleged] improvements” that “modify digital image data based on its *subject*, for example, a person, and according to the scene that the image captured.” Appx153 (¶ 95) (emphasis added). The “inventions” purportedly improve upon prior art that “assumed” the main object of an image was at its center and, thus, performed correction “operations” based on the center of an image, which might not include its

true main object. Appx153 (¶ 96). That is, claim 1 purports to improve image quality by increasing sharpness wherever the main object of the image lies, rather than presuming the main object is in the center of the image.

The complaint also alleges that claim 1's reference to an "image file" invokes a "specific data structure" that contains "particular information." *E.g.*, Appx153 (¶¶ 95-96). The complaint does not allege that the "image file" or "data structure" is new. *See, e.g.*, Appx153 (¶¶ 95-96); Appx154 (¶¶ 99-101); Appx156 (¶ 103). The complaint also does not state that the "shooting scene" and "location" information that is contained in the image file, per claim 1, is anything other than conventional data. *See, e.g.*, Appx153 (¶¶ 95-96); Appx154 (¶¶ 99-101); Appx156 (¶ 103).

The '109 patent explains that the claimed "image file" covers any image file with the requisite data components, or even "separate files" containing the requisite data components, provided they function "substantially the same as if they are stored in one file" at the point of image processing. Appx107 at 7:22-57. Where the '109 patent discusses a specific file format, it refers to an industry-standard format in which the patent contemplates that a file region intended for the photographer's preferred metadata can be populated with the shooting scene and location information. *See* Appx106-107 at 6:44-7:21. The patent further states that its parameters are "for illustrative purposes only, and it is obvious that other appropriate parameters may also be used." Appx110 at 14:64-66.

## II. Procedural History

Google moved to dismiss Longitude's complaint in part, arguing that each claim in the four asserted patents is directed to ineligible subject matter. Appx256.[3] Applying the two-step test for patent eligibility articulated in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014), Google argued that at step one, Longitude's claims were directed to an abstract idea, and at step two, the claims lacked any inventive concept sufficient to transform them into patent-eligible applications of the abstract ideas. Specifically, Google argued that Longitude's claims were directed to various ideas for improving image quality of a main object. *E.g.*, Appx257 (Google's Motion) (Longitude "alleges the purported novelty of the '365 and '574 claims lies in limiting image improvements to a specific region: the identified 'main object.'"); Appx265 (similar for the '056 patent); Appx267 (similar for the '109 patent). Google further argued that the claims lacked any inventive elements beyond the abstract ideas themselves.

Longitude opposed, arguing that claims 5 and 32 in the '365 patent, claim 3 in the '574 patent, claim 10 in the '056 patent, and claim 1 in the '109 patent were directed to patent-eligible subject matter. For each claim, Longitude argued that the claimed inventions represented an improvement over the prior art because prior art

[3] Google explained that it believed that the claims of each of the seven asserted patents are directed to ineligible abstract ideas. But it chose to focus on the four patents at issue here due to the district court's fifteen-page briefing limits. Appx256.

devices made adjustments "across the board" while the claimed inventions focused on a specific region. *E.g.*, Appx281 (claim 32 of '365 patent); Appx284 (claim 3 of the '574 patent); Appx286 (claim 10 of '056 patent); Appx288 (claim 1 of '109 patent). It also argued that claim 1 of the '109 patent recited an "improved image file structure"—a point missing from the factual allegations in its complaint and contradicted by the written description. Appx288; *see* Appx106-107 at 6:44-7:21.

The district court dismissed Longitude's complaint with respect to the four patents. Appx002-004. At *Alice* step one, the court held that each claim is "drawn to an abstract idea: the idea of improving image quality by adjusting various aspects of an image based on features of the main object in the image." Appx002. The court explained that any "variations" among the claims were just modifications of the "abstract idea[]" at issue and, thus, had no impact on eligibility. Appx002; *see also* Appx004 ("[T]he additional claims that Longitude discusses" are "plagued by the same problems" as all of the other asserted claims.). At *Alice* step two, the district court held that each claim "lack[s] any remaining inventive concept" that could transform the recited abstract idea into a patent eligible concept. Appx002. Although Longitude had argued that a few terms (e.g., "pixel values") had technical meanings, the district court held that Longitude failed to articulate any alternative construction that would impact eligibility. Appx003.

After Longitude voluntarily dismissed its complaint with respect to the patents not at issue in Google's motion, the district court entered final judgment. Appx001.

**SUMMARY OF THE ARGUMENT**

I. At the outset, the Court should reject Longitude's attempts to distort the familiar legal standards that govern the two-step eligibility analysis. Longitude suggests that claims may be found abstract only if the court finds based on "overwhelming" intrinsic evidence that they are directed to automating longstanding human activity, which Longitude characterizes as a finding of fact. Principal Br. 31; *see also* Principal Br. 29-33. That is wrong on several counts. The universe of abstract ideas includes not only automation of longstanding human activity, but also abstract concepts such as mental processes and intangible subject matter such as manipulating information—irrespective of whether a plaintiff claims those concepts or subject matter are novel. The claims at issue here fall in all of those categories. Longitude also attempts to elide the distinction between claims and written description; contrary to Longitude's argument, it is the claims that control in the eligibility analysis, and the written description is relevant only to the extent it sheds light on the claims' scope. Here Longitude has not identified any way in which the patents' written descriptions limit the claims in any relevant respect, so its attempt to import technical details into the claims must be rejected. Finally, contrary to Longitude's argument, no fact finding is necessary here. As this Court has

repeatedly reaffirmed, it may hold claims ineligible at the pleading stage where, as here, the claims, written descriptions, and allegations in the complaint all demonstrate that the claims address ineligible subject matter as a matter of law.

II. At step one of the eligibility inquiry, the asserted claims are each directed to an abstract idea. *Alice*, 573 U.S. at 217. The claims contain nothing more than broadly functional language directed to "improving image quality by adjusting various aspects of an image based on features of the main object in the image." Appx002. The patents are thus directed to a means of organizing and altering data using generic computer hardware: they capture the broad concept of altering the data of an image based on its main object rather than any particular application of that concept. Longitude's contention that the claims recite a specific, technical improvement is belied by the claim language, the written description, and Longitude's own arguments. Indeed, as Longitude's arguments reflect, the claims are so broad that they essentially capture longstanding human activity, performed on a generic computer. Claims of this sort, which use a generic computer as nothing more than a tool, are quintessentially abstract.

Longitude complains that the district court "oversimplif[ied]" the claims, Principal Br. 24, but it is the claims themselves that are simple. Longitude notably does not identify any specific or technical detail that the district court improperly overlooked. Longitude's assertion that the court should have addressed each claim

separately is equally meritless. As the court explained, Appx002, any variation in claim language is trivial for purposes of eligibility. Considered separately or together, no asserted claim is directed to patent-eligible subject matter.

III. At step two of the eligibility inquiry, no asserted claim recites an "inventive concept" sufficient to "transform" the claimed abstract idea in into patent-eligible subject matter. *Alice*, 573 U.S. at 217. For each claim, Longitude points only to the (allegedly) new abstract idea as the inventive concept, but that is plainly insufficient: the inventive concept must be something more than the abstract idea itself. Beyond that, Longitude argues that one asserted claim (claim 1 of the '109 patent) recites a new "image file," but the written description establishes that the image file is not new or unconventional, and Longitude's complaint does not allege otherwise. *E.g.*, Appx110 at 14:37-57. Ultimately, the claims, written description, and factual allegations establish as a matter of law that the claims lack any inventive concept. This Court should affirm.

## ARGUMENT

### I. Standard of Review

Subject-matter eligibility under 35 U.S.C. § 101 is a question of law, which may in some cases involve subsidiary questions of fact. *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 703 (Fed. Cir. 2023). This Court reviews the district court's

dismissal using the standard of the regional circuit, here the Ninth Circuit. *See id.* at 702. The Ninth Circuit reviews dismissal orders de novo. *E.g.*, *id.*

## II. Longitude's Attempt to Reformulate the Section 101 Inquiry Should Be Rejected.

Longitude attempts at length to water down the well-established legal standards governing the Section 101 inquiry. The parties agree on the basic two-step *Alice* framework: the Court must determine whether the "focus" of the claims is such that they are directed to an abstract idea, and if so, whether the claim recites an "inventive concept" that "transforms" the otherwise ineligible abstract idea into a patent-eligible application. *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019). But beyond that, Longitude distorts the legal standards in several significant respects that are relevant here.

*First*, Longitude misstates the substantive standards governing whether a claim is directed to an abstract idea. Longitude asserts that the Court may find the claims directed to abstract ideas at *Alice* step one only if "the claimed embodiments recite only longstanding practices or conventional activity." Principal Br. 31. That is wrong. Although the category of longstanding practices implemented on conventional computers—for instance, the intermediated bank settlement method at issue in *Alice* itself, 573 U.S. at 220—represents *one* category of claims directed to abstract ideas, it is far from the only one. Abstract ideas also include fundamental

principles, mental processes, and intangible subject matter such as manipulating information. *Id.* at 219-20; *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016). After all, "a claim for a new abstract idea is still an abstract idea." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1363 (Fed. Cir. 2023) (citation and emphasis omitted).[4] For instance, as particularly relevant here, claims directed to organizing, manipulating, analyzing, and presenting data are particularly likely to be directed to abstract ideas. *Elec. Power Grp.*, 830 F.3d at 1353.

In the context of claims involving computers, the critical task is to distinguish between non-abstract "computer-functionality improvements" and abstract, ineligible improvements in "uses of existing computers as tools in aid of processes focused on abstract ideas." *Id.* at 1354. Longitude is therefore wrong to assert that a computer-based claim is non-abstract merely because it "differ[s] from and thereby improve[s] upon prior computing systems or processes." Principal Br. 31. A claim that focuses only "on asserted advances in uses to which existing computer capabilities could be put" is abstract—even if the claim represents an "advance[]" in how existing computer capabilities are used. *Elec. Power*, 830 F.3d at 1354. Thus, to be nonabstract, the claim must focus on an improvement in "*how* computers could

---

[4] To be clear, no abstract idea captured in the asserted claims is new.

carry out one of their basic functions." *Id.* (emphasis added). The upshot is that a claim is abstract if it is directed to new ways of using computers to collect and analyze information, without describing any advance in how the computer achieves those results as a computing matter. *E.g.*, *ChargePoint, Inc.*, 920 F.3d at 768 (claim addressing need for network-controlled electric car charging stations was directed to abstract idea); *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (claims directed to problem of archiving and tracking digital images were abstract); *Elec. Power*, 830 F.3d at 1354 (claim to improved method of monitoring the power grid was abstract because the focus of the advance was on the process of gathering and analyzing information).

In determining whether the claims' focus is an improvement in computer functionality or merely a use of computers to achieve an abstract idea, several considerations may be relevant. Most pertinent here, claims that describe the purported invention in "result[s]-based," "functional" terms, "without explaining how to accomplish any of the tasks," are usually abstract. *E.g.*, *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1378 (Fed. Cir. 2022); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *Elec. Power*, 830 F.3d at 1354. That principle reflects two basic insights. First, a claim that describes a result without including details for how to achieve the result is focused on the result itself, not any necessary "technical improvement" in how to

obtain the result. *IBM*, 50 F.4th at 1378. Second, claims described in functional terms are broad—that is, not limited to particular technological advances—and because the primary concern of the abstract ideas doctrine is preemption, "broad" claims are more likely to be ineligible. *E.g.*, *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015).

For much the same reasons, another "telltale sign of abstraction is when the claimed functions are mental processes that can be performed in the human mind or using a pencil and paper." *Trinity*, 72 F.4th at 1361-62 (cleaned up). A claim that transfers human activities or mental processes to the computer context "merely seeks to use computers as a tool," rather than reciting "an improvement in computer capabilities." *Id*. at 1363. It does not matter whether the claim is literally capable of being performed by a human mind; the addition of a computer often means that a human could not literally undertake the contemplated network communication or calculations. *See id*. at 1363-64 (collecting cases). The point is that the focus of the claim is harnessing a computer to facilitate an abstract activity, such as perceiving and altering information.

*Second*, Longitude misstates the focal point of the eligibility analysis. At both steps, "[t]he § 101 inquiry must focus on the language of the Asserted Claims themselves." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016). Longitude attempts to elide the distinction between the claims and the

written description for purposes of the Section 101 analysis, urging the Court to consider "the intrinsic evidence" without distinguishing between the claims and the written description. Principal Br. 31-32. But although the written description can be "helpful in illuminating what a claim is directed to" in the Section 101 inquiry, reliance on the written description "must always yield to the claim language in identifying th[e] focus" of the claims. *ChargePoint*, 920 F.3d at 766 (citation omitted). That is because the central concern of the abstract-ideas doctrine is preemption—i.e., that the patentee is improperly attempting to lay claim to the entirety of an abstract idea. *Id.* Limitations or technical elements contained in the written description therefore may not be imported into the claims for purposes of the abstract-ideas inquiry if the claims themselves do not include those elements. *Id.* at 769. Thus, this Court has recognized that even a written description "full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims." *Id.*

*Third*, Longitude attempts to narrow the situations in which courts may hold that claims are patent ineligible at the pleading stage. Longitude asserts that the abstract-idea inquiry "requires fact finding." Principal Br. 29. Not so. Patent eligibility is a question of law that may involve subsidiary facts, but like any other such question, it may be resolved as a matter of law in appropriate cases.

*PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1314 (Fed. Cir. 2021); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) (explaining that "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry"). Courts, including this Court, often resolve the step one inquiry as a matter of law, by examining the focus of the claims in light of analogous cases. And although, at step two, the question whether the claim has an inventive concept—that is, whether it contains more than conventional routine steps—can involve questions of fact, that question may also be resolved as a matter of law. *See Berkheimer*, 881 F.3d at 1368. The patent itself may establish that the claims contain no inventive concept, and the complaint's allegations of inventiveness need not be taken as true, for instance, when they are contradicted by the written description. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (collecting cases).

### III. At *Alice* Step One, the Asserted Claims Are Directed to Abstract Ideas.

The district court correctly held that each of the claims that Longitude asserts in this case are directed to the same overarching abstract idea: "improving image quality by adjusting various aspects of an image based on features of the main object in the image." Appx002. Indeed, the patents' central focus is undisputed: Longitude describes the patents' core purported improvement as adjusting an image using "correction conditions" (e.g., brightness, contrast) corresponding to the image's

main object (as opposed to adjusting an image based on the characteristics of the entire image). Longitude further explains that the "crux" of the alleged invention is "the relation of correction conditions to the properties of the main object." Principal Br. 8.

Adjusting an image based on the main object in the image (as opposed to the image as a whole) is simply a way of organizing and altering data. It is well established that such claims are abstract, and this Court has repeatedly held that similar claims involving manipulation of digital images are directed to abstract ideas. *See, e.g., RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1324 (Fed. Cir. 2017) (finding abstract claims to a method for creating a composite image in which "facial feature images are associated with facial feature element codes," and then edited using those codes); *Yu*, 1 F.4th at 1043 (claim directed to abstract idea of enhancing one image using data in another image); *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 901-02 (Fed. Cir. 2020) (claims directed to abstract idea of converting an incoming signal into various data formats). Longitude's claims are no different.

Longitude contends, however, that its claims are not abstract because they describe a technological improvement in image manipulation. But in fact, no *claim* limitation focuses on any specific, technical improvement. Rather, the claims use entirely functional language to describe the result they seek, and they are so broad that they capture mental processes and longstanding human activity—both key

hallmarks of abstractness. Perhaps recognizing the claims' evident abstractness, Longitude focuses not on the language of the claims, but on unclaimed details contained in the written description. But those details may not be imported into the claims for purposes of the Section 101 analysis, and in any event, they do not cure the claims' abstractness. In the end, as described further below, the step-one analysis in this case is straightforward, as this Court's traditional step-one considerations all point toward ineligibility.

In performing the step-one analysis, this Court may treat the claims together, as did the district court. Appx002-004. Longitude identifies a handful of claims that it urges the Court to address independently. But there is no reason to do so, given that the asserted claims merely involve "trivial variations" in language that do not affect the step-one conclusion. *Cf. Trinity,* 72 F.4th at 1362. Nonetheless, Google addresses the claims separately to respond to each of Longitude's arguments. And because Longitude treats claim 32 of the '365 patent as the primary claim for analysis, Principal Br. 34-46, Google does the same. In all events, whether addressed separately or together, the correct conclusion is clear: the claims are not directed to patent-eligible subject matter.

### A. Claim 32 is Directed to an Abstract Idea.

Claim 32 of the ’365 patent claims, in purely functional terms, the idea of adjusting the characteristics of an image based on its main object—a concept that photographers and art restorers, among others, have applied for centuries.

#### 1. Claim 32 Is Framed in Entirely Functional Terms.

Claim 32 recites (1) “determining” main object image data, (2) “acquiring” the properties of the main object image data, (3) “acquiring correction conditions” that “correspond[]” to those data properties, and (4) “adjusting” the picture quality of the main image data based on the correction conditions. *See* Appx041 at 32:23-33. Then, the claim requires that all of those high-level steps be performed by a generic “integrated circuit.” *Id.*

Nothing in the claim language explains *how* any of these functional steps must be performed. For example, no claim limitation requires any specific method for “determining” the main image data; explains how the “properties” or “correction conditions” are to be acquired; or explains how an image might be “adjusted.” So long as a generic “integrated circuit” can perform the “determining,” “acquiring,” and “adjusting,” those steps will fall within the scope of claim 32. The alleged invention thus encompasses employing typical adjustment methods, in a typical way, to adjust image quality based on characteristics of the main object in the image—rather than “across the board.” Appx026 at 1:31. It does not even specify what

adjustments are made or require that those adjustments improve image quality. Put in simple terms, claim 32 requires collecting and adjusting data using basic computer hardware. That is an abstract idea.

The written description confirms that claim 32 is addressed to an abstract idea: it does not narrow or define any of claim 32's data concepts. The "main object" of the image is any primary focus of the image, such as the "sky" or "vegetation." *See, e.g.*, Appx034 at 18:54-57; *see* Appx034 at 18:54-67. And the "data" or "properties" associated with that object may take a number of forms, such as color (e.g., various "flesh" colors, Appx035 at 19:2-3) or other "different types" of characteristics, Appx034 at 18:51-55. The "correction conditions" must "correspond[]" to the main object's properties (e.g., altering the color of the sky), but they can take various forms and can be determined in various ways. Appx032 at 14:56, Appx033 at 15:1-44. Longitude has not attempted to narrow "data," "properties," or "correction conditions" in any way. Thus, the "properties" of the main object image data and "correction conditions" for those properties are broad concepts. *See* Appx032 at 14:51-58. Examples include "statistical values" and "color values," but the written description contains no clear definition limiting the scope of these generic terms. Appx032 at 14:51-58. Indeed, there is nothing specific or technical about "object[s]," "data," "properties," or "conditions."

In its use of purely functional language, claim 32 bears a striking resemblance to claims that this Court has held are directed to an abstract idea, in particular those at issue in *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349 (Fed. Cir. 2023). In *Hawk*, the claims involved methods of viewing multiple simultaneously displayed video images on a remote viewing device by using "temporal and spatial parameters associated with each image." *Id*. at 1352-53. This Court explained that the claims were directed to an abstract idea because they required "functional results" (like "receiving" and "converting" data) and failed to define their data elements ("parameters") or how those elements "should be manipulated." *Id.* at 1357. In particular, although the patentee relied heavily on the claims' mention of "parameters" used to guide the display of video images—much like Longitude asserts that its claims' "correction conditions" are the "crux" of the invention, Principal Br. 7-8—the Court rejected that reliance because the claims did not "explain what the claimed parameters are or how they should be manipulated." *Hawk*, 60 F.4th at 1357 (cleaned up). So too here. Claim 32 recites a method of altering data by means of functionally described steps, without explaining what those steps are or how they must be performed. And the claim does not explain what the claimed "correction conditions" are or "how they should be manipulated." *Id*.

Other decisions provide further confirmation that claim 32 is directed to an abstract idea. In *Sanderling*, the claims were directed to a method of "using

distribution rules to load digital image branding functions to users when certain conditions are met." 65 F.4th at 701. This Court held the claims were abstract, characterizing the alleged invention as using a computer as "a tool to identify when a condition is met and then to distribute information based on satisfaction of that condition," failing to recite any technological improvement in computer functionality. *Id*. at 703. The claims' reliance on a "distribution rule" did not alter that conclusion, because that element "merely" performed the "generic" steps of "receiv[ing], match[ing], and then distribut[ing] the corresponding function based on the user's location." *Id*. Here, claim 32 is directed to the similarly abstract function of identifying a characteristic of a digital image—the main object—and altering the image based on "correction conditions" related to that object. The application of "correction conditions," similar to the distribution rule in *Sanderling*, merely performs the generic step of "adjusting picture quality" based on the chosen correction condition. Other similar decisions abound. *See, e.g., RecogniCorp.*, 855 F.3d at 1326 (finding abstract a method in which "a user displays images on a first display, assigns image codes to the images through an interface using a mathematical formula, and then reproduces the image based on the codes"); *Two-Way*, 874 F.3d at 1337-38 (claim to method of forwarding information in a communications network was abstract because it used functional language and did not explain how the steps were undertaken); *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335,

1345 (Fed. Cir. 2018) (method of using “attention manager” to provide information did not explain how the attention manager manages content display and was therefore abstract). Claim 32 is directed to an abstract idea.

### 2. Claim 32 Recites Longstanding Human Activity.

Claim 32 is directed to an abstract idea for a second reason: the “functions” that it claims amount to nothing more than longstanding activities and “mental processes” implemented using basic tools. *Trinity*, 72 F.4th at 1361-62 (citation omitted). Each of its steps describes a task that humans can (and did) perform long before the advent of computers or digital cameras:

- Determining the main object. A restoration artist or photo retoucher might identify the human face as the “main object” characterizing a portrait.
- “Acquiring” the “properties” of the main object. The restoration artist might identify the color of the person’s complexion; that color is certainly a property of the “main object.”
- “Acquiring correction conditions” that correspond to the “properties” of the main object. The restoration artist, for example, might decide that the color of the painting’s subject has darkened with time, and might acquire—in his mind—an understanding of what color the corrected complexion should have.

- "Adjusting" the main object "using" the correction condition. After identifying the correct complexion color, the artist could "adjust" the aged color to match his mental image. Doing so would require nothing more than using a paintbrush and the artist's mental ingenuity.[5]

The written description confirms that claim 32 is directed to automating a human activity. Even in the digital world, human "[u]sers" could "adjust picture quality using retouching software." Appx026 at 1:14-15. But this required the user to have "experience and familiarity" with adjustment techniques to ensure "accurate adjustment of picture quality." Appx026 at 1:15-19. So those in the art had "proposed" ways of "automatically adjusting picture quality." Appx026 at 1:15-19. Automating a pen-and-paper task to "conserve human resources and minimize errors" is a "quintessential" abstract idea. *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019).

Claim 32 is thus similar to other claims that have been held to be abstract on this basis. In *Yu*, for instance, the Court held that a claim directed to using

[5] Longitude protests that the record lacks "evidence" supporting this analogy. Principal Br. 38-39. But the Court regularly relies on commonsense comparisons to human activity when holding that claims are ineligible, without regard to whether those precise analogies appear in the written description or the complaint. *E.g., Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020) (drawing a number of analogies to aid the analysis); *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021) (similar).

conventional camera components to "produc[e] a resultant digital image from [a] first digital image enhanced with [a] second digital image" was abstract because it automated the common photographers' practice of "using multiple pictures to enhance each other." 1 F.4th at 1043. Similarly, claim 32 uses conventional computer components (e.g., an "integrated circuit" and "data") to accomplish basic human conduct.

And in *Plotagraph, Inc. v. Lightricks, Ltd.*, 2024 WL 223185, at *3-*4 (Fed. Cir. Jan. 22, 2024), claims directed to animating images by "shifting" sets of pixels to create an illusion of movement were abstract because animation, the focus of the claimed advance, "could otherwise be accomplished manually." It did not matter that "pixel-shifting cannot" literally "be done by hand." *Id.* at *2. Placing animation "in the realm of computers," where "pixels" are moved, did not "render the claim[] any less abstract." *Id.* at *3. Here, adjusting an image can be accomplished by hand; it does not matter that the precise method claimed here relies on conventional computers.

### 3. Claim 32 Does Not Recite an Improvement to Computer Technology.

Longitude contends that claim 32 is not abstract because it improves a computer's functioning. In Longitude's view, claim 32 enables a computer to "tailor adjustments" to an image's main object, by "obtaining the properties of the data corresponding to the image's main object and associating those properties with

corresponding correction conditions." Principal Br. 37. That is wrong for several reasons.

Most importantly, claim 32 nowhere describes *how* the computer obtains the data properties of the main object or associates those properties with particular correction conditions. *See Hawk*, 60 F.4th at 1357 (rejecting patentee's claim of technological improvement on this basis). Instead, claim 32 merely states that the computer achieves these results in *some* manner, thus demonstrating that the claim is focused on the abstract idea of altering an image based on the main object rather than an improvement in a computer's ability to do so. *See* pp. 27-31, *supra*. Moreover, although Longitude asserts that the claimed invention is an advance over the prior art because it uses "particular data" to "differentiate among main objects," Principal Br. 37, nothing in the claim itself suggests, much less requires, any particular data or particular correction conditions.[6] Finally, claim 32's reliance on generic computer components to perform its functionally described steps leaves no doubt that the claim is not directed to a technological improvement in computer function. Any "integrated circuit" that performs the requisite collection and analysis of data in any manner will suffice, confirming that the computer simply "provide[s]

---

[6] Nor is it clear that, had the claims recited such a limitation, it would be any less abstract. Distinguishing among main objects is an abstract idea long performed by humans.

a generic technical environment for performing the abstract idea." *Trinity*, 72 F.4th at 1364.

Longitude attempts to identify purportedly specific details that, in its view, render the claim a technological improvement. Principal Br. 37 (citing written description for "specific data properties," "such as different shades of sky"), 38 (asserting that "specification ties the image quality improvements to the association of correction conditions with [the] main object"). But those details appear in the written description, not the claim, and Longitude does not contend that they limit the claim.[7] S*ee Trinity*, 72 F.4th at 1361 (holding disclosures in the written description must "always yield to the claim language"). In any event, the '365 patent's written description actually confirms the non-technical nature of the alleged advance in claim 32, for several reasons. First, the patent describes the asserted problem as "a need for a picture quality adjusting technique that is more responsive to variations in main objects," Appx026 at 1:39-40, and proposes "improv[ing] the picture quality of the main object characterizing an image," Appx026 at 1:46-48. Nothing about

[7] Indeed, in its brief Longitude is careful to avoid imparting any narrow or technical meaning to the limitations in claim 32. When describing the claimed "correction conditions" and the main-object "properties" to which those conditions are applied, for example, Longitude speaks only in exemplary, high-level terms. *See* Principal Br. 6-8. Similarly, Longitude references the functional steps in claim 32 (e.g., "acquiring") without any explanation of how those steps are performed. E.g., Principal Br. 7, 34.

that problem-solution pair is specific or technical; indeed, it is simply a restatement of the abstract idea itself. *See Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017). Second, although the written description does discuss some specific correction conditions and equations for calculating "correction levels," the patent expressly states that those described equations "do not limit the invention." Appx039 at 27:37-38. Third, and relatedly, nothing in the patent suggests those correction conditions or main object properties are any different than ordinary, common ways of adjusting image data based on standard properties. The patent states that both "correction conditions" and properties include, but are not limited to, "statistical values and color values," which are not further defined. Appx032 at 14:51-58.

For those reasons, claim 32 is nothing like the claims that this Court has upheld as directed to non-abstract technological improvements. Longitude relies exclusively on *McRO, Inc. v. Bandai Namco Games Am. Inc.*, but the contrast between the claims at issue there and claim 32 only reinforces that claim 32 is directed to an abstract idea. The claims in *McRO* incorporated an extensive set of rules that enabled a computer to automate phonemes in 3-D animation. 837 F.3d 1299, 1314 (Fed. Cir. 2016). The Court explained that the claims' specificity rendered them non-abstract: "*by incorporating the specific features of the rules as claim limitations*, claim 1 is limited to a specific process for automatically animating

characters using particular information and techniques." *Id*. at 1316. Here, even if Longitude's generalized "correction conditions" could be analogized to the extremely specific rules disclosed in the *McRO* claims, Principal Br. 38, claim 32 discloses *no* specific features of the "correction conditions" and contains no explanation as to *how* applying them alters an image. There is no specific, technical solution recited in claim 32.

More broadly, the hallmark of the Court's decisions upholding claims as nonabstract technological improvements is—as *McRO* itself suggests—*specificity*. Decisions after *McRO* have made clear that claims describing rules cast in broader terms than those in *McRO* are abstract. *Sanderling*, 65 F.4th at 703; *Hawk*, 60 F.4th at 1357-58 (distinguishing eligible claims on the ground that they provided "a specific solution . . . and required specific features" described in the claims); *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021) ("[P]atent eligibility often turns on whether the claims provide sufficient specificity to constitute an improvement to computer functionality itself."). In *Sanderling*, for instance, the Court held that claims to a method of distributing information geographically using a "distribution rule" were directed to an abstract idea. The Court distinguished *McRO* on the ground that the *Sanderling* claims were far less specific; that is, the *Sanderling* steps of receiving, matching, and distributing information formed "a much more generic set of steps than *McRO's* specific claim

language." *Sanderling*, 65 F.4th at 703. That reasoning applies with equal force here: claim 32 merely describes the generic steps of "determining," "acquiring," and "adjusting" data.

#### 4. Longitude's Remaining Arguments as to Claim 32 Lack Merit.

Longitude complains that the district court "oversimplif[ied] the claims" when it articulated their scope. *See, e.g.*, Principal Br. 35. But a court oversimplifies only when it fails to account for "specific requirements" of the claims. *See McRO*, 837 F.3d at 1313. Longitude fails to identify any *specific* claim limitation in claim 32 that the district court did not appreciate, pointing only to the entirely functional language in the claim and the additional details in the written description that are not reflected in the claim. *Sanderling*, 65 F.4th at 703 (rejecting charge of oversimplification on this ground); *Trinity*, 72 F.4th at 1361 (stating similar legal principles). The simple nature of the district court's analysis follows from the simple nature of the claims.

Finally, Longitude suggests that courts may conclude that a claim is directed to an abstract idea only when the written description or the patent owner concedes that the claim recites only conventional activities. Principal Br. 39. Here, of course, the written description does reveal that the claim is directed to conventional activities. *See* p. 28, *supra*. And in any event, Longitude is wrong. The universe of abstract ideas extends far more broadly. *See* pp. 19-24, *supra*. This Court has

repeatedly held claims to be directed to an abstract idea, including at the pleading stage, without relying on any suggestion in the written description or patentee's argument that the claims are directed to conventional activities. *See, e.g., Hawk*, 60 F.4th at 1357; *ChargePoint*, 920 F.3d 769-70; *Sanderling*, 65 F.4th at 703; *Elec. Power*, 830 F.3d at 1354.

### B. Every Other Asserted Claim Is Similarly Directed to An Abstract Idea.

The other asserted claims fare no better than claim 32 of the '365 patent. At the margins, those claims may "add trivial variations of the abstract idea" recited in claim 32, but that does not alter their fundamental flaws. *See Trinity*, 72 F.4th at 1362. Each claim is framed in functional terms; each is directed to conventional human activities; and none is directed to an improvement in a computer's functioning as a computer. While some of the claims contain field-of-use restrictions or other additional details, those do not change the fact that the focus of each claim is an abstract idea.

1. **Claim 5 of the '365 patent.** Claim 5 is addressed to determining an image's main object. The claim recites a device that performs a number of functional steps similar to those in claim 32. Appx039 at 28:33-48. As Longitude articulates it, claim 5 describes a device that (1) segments an image into areas, (2) analyzes those areas, (3) acquires position data for those areas, and (4) uses the position data and the analysis to determine the main object in the image. Principal Br. 11. The

purpose of main-object identification is to facilitate "automatically adjusting picture quality of image data." Appx026 at 1:24-29. Thus, claim 5 is directed to a subsidiary, equally abstract idea as claim 32—identifying the main object using position data—and both claims are aimed at improving image quality using main-object properties.

Longitude criticizes the district court for not addressing claim 5 separately, but that formalistic argument is easily rejected. Longitude's contention that claim 5 is directed to a "distinct invention," Principal Br. 10, is belied by the patent's description of claim 5 as an "aspect of the ['365 patent's] invention," Appx026 at 2:16, and its statement that the purpose of identifying the main object (claim 5) is to facilitate adjusting the image (claim 32), *see* Appx026 at 1:24-29; Appx131 (¶ 47).

In all events, Longitude's argument is beside the point, because claim 5 is unquestionably directed to an abstract idea. *Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 955 (9th Cir. 2007) (court may affirm "for any reason supported by the record"); *see Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 937 (Fed. Cir. 2015) (applying Sixth Circuit law to the same effect). Claim 5 requires nothing more than ordinary, abstract data manipulation. The claim requires a number of components defined in functional terms, each of which performs basic data collection (e.g., "acquires") or manipulation (e.g., "segments"). Considered together, these limitations recite nothing more than the abstract idea of collecting

image data, breaking that data into subsets (i.e., areas), and then using information about the subsets (i.e., location), together with the "results of analysis," to identify the main object in the image. Appx039 at 28:35-49. Nothing in the claim explains *how* the computer ascertains the main object based on its location in the image. And each limitation is executed by generic computer components, like a "processing device" and "integrated circuit." The "advance" that claim 5 "purport[s] to make" therefore is nothing more than a process of "gathering and analyzing information" without "any particular assertedly inventive technology for *performing* those functions." *Elec. Power*, 830 F.3d at 1354 (emphasis added).

As with claim 32, moreover, claim 5's steps each involve a function that any human could perform. A person can "acquire" an image by looking at it, or conjuring it in his mind's eye; he can "segment[]" the image into multiple areas for analysis, such as by using a basic grid system, either on paper or in his mind; he can "acquire[] position data" of each area by perceiving where each square on the grid is on the image; and he can "determine" the main object of the image by, for instance, assessing which object appears in the image's center. Indeed, in *Electric Power*, this Court held that selecting information by "source" (i.e., from different data streams) and then analyzing that information "does nothing significant to differentiate a process from ordinary mental processes." 830 F.3d at 1355. In a similar sense, claim 5 selects a "main object" by considering data (i.e., image data) from different

sources (i.e., different locations in the image). Considering where information came from and then analyzing it based on that source, is an inherently abstract task.

Claim 5 therefore falls within the "familiar class" of claims directed to abstract data manipulation. *Elec. Power*, 830 F.3d at 1353. This Court has routinely held that claims quite similar to claim 5 are directed to abstract ideas. *See, e.g.*, *Intell. Ventures I*, 850 F.3d at 1340 (claim to collecting information in a dynamic document, analyzing that information, and "somehow modif[ying]" a second document as a result was directed to abstract idea); *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (holding that the "patents [we]re drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory"); *Realtime Data LLC v. Array Networks Inc.*, 2023 WL 4924814, at *8 (Fed. Cir. Aug. 2, 2023) (claims directed to analyzing data, determining if it had certain attributes, then outputting data in particular forms based on its attributes, were directed to an abstract idea).

Longitude's attempt to establish that claim 5 is directed to a technological improvement in computer functioning falls flat. Nothing in the language requires "specific data" or specific analytical methods beyond the abstract idea—captured in functional terms. Because the claim does not explain *how* to use position data to more accurately identify the main object, the claim "merely encompasses the

abstract idea itself." *Intell. Ventures I*, 850 F.3d at 1341. And Longitude is forced once again to resort to purportedly technical details that appear only in the written description. Specifically, it alleges the claimed invention allows devices to "associate different areas of an image with different types of potential main objects," and it cites an example of the application of color and position conditions. Principal Br. 11-12 (citing Appx039 at 28:33-48; Appx026 at 1:44-48, 2:16-31; Appx030-031 at 10:44-11:38). But no such limitations appear in claim 5. *See, e.g., Yu*, 1 F.4th at 1044 (rejecting patentee's reliance on "particular configuration of lenses" discussed in written description, where claims were not so limited).

2. **Claims 19 and 21 of the '365 patent.** Neither of these claims, nor any remaining claim in the '365 patent, is properly before this Court. For the first time on appeal, and in just one paragraph, Longitude argues that the district court should have addressed claims 19 and 21 separately and held them eligible. Principal Br. 44-45. But Longitude did not even mention those claims below, even though Google's motion to dismiss placed the '365 patent in issue. *E.g.*, Appx283-284. Longitude has therefore waived or forfeited any arguments as to those claims.[8] *E.g.*,

[8] To the extent that Longitude suggests that Google and the district court were obligated to assess every single claim in each patent, regardless of whether Longitude explicitly asserted each claim in its complaint or briefing, identified them as representative, or otherwise differentiated among them, Principal Br. 45-46 & n.3, that argument is meritless. In response to Google's motion to dismiss, Longitude had the opportunity to—and did—identify additional claims, beyond those initially addressed by Google, that it believed warranted analysis. The district court

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 756 (Fed. Cir. 2019) (applying First Circuit law to hold similar arguments were not preserved).

In all events, claims 19 and 21 "merely add trivial variations of the abstract idea" recited in other claims in the '365 patent. *See Trinity*, 72 F.4th at 1362. Like claims 5 and 32, claims 19 and 21 are worded in entirely functional terms. And although Longitude asserts that these claims provide "additional detail," those details are wholly divorced from the "claimed advance." *See id.* at 1361. Longitude emphasizes that claim 19 recites that the "correction conditions" are "correction standard values," and that the system adjusts the image to reduce the difference between the "property values and the standard correction values." Principal Br. 44-45. But neither of these limitations is the focus of the *claimed advance*, that is, "tailoring quality adjustments *based* [*on*] *the main object*." Principal Br. 38 (emphasis added). Rather, claim 19's limitations merely "restrict the invention's field of use" to a particular use of the correction conditions to alter the image based on the main object. *Intell. Ventures I*, 850 F.3d at 1340. Similarly, claim 21,

---

addressed those claims. There is no justification for placing the burden on the accused infringer to differentiate among claims even when the patentee has not done so. *E.g.*, *Berkheimer*, 881 F.3d at 1365 (holding courts may treat a claim as representative when a "patentee" fails to present "any meaningful argument" otherwise).

according to Longitude, "integrates inventive aspects from claims 5 and 32" into a single claim by identifying a main object in accordance with claim 5 and then adjusting the full image based on properties of the main object. Principal Br. 45. But as explained (*see* pp. 39-43, *supra*), claims 5 and 32 relate to the same overarching abstract idea. And if even they do not, "adding one abstract idea to another" does not make a claim any less abstract. *PersonalWeb Techs.*, 8 F.4th at 1317 (citation omitted).

3. **Claim 3 of the '574 patent**. Claim 3 recites the method described in claim 32 of the '365 patent but limited to images in which the main object is a human face. It describes adjusting the face using a few enumerated correction conditions such as brightness and contrast. The claim is therefore materially indistinguishable from claim 32. Longitude itself recognizes as much, largely recapitulating the same arguments. *Compare* Principal Br. 36-40 (claim 32), *with* Principal Br. 46-50 (claim 3). Those arguments fail for the reasons stated above. S*ee* pp. 27-39, *supra*.

Otherwise, Longitude relies on the fact that claim 3 is limited to a particular main object and particular correction conditions. But neither limitation renders claim 3 non-abstract, because neither has anything to do with any "claimed advance" in the '574 patent—which, according to Longitude, Principal Br. 15, is (once again) adjusting an image based on characteristics of the main object. *See Trinity*, 72 F.4th at 1362. Claim 3's additional limitations are therefore nothing more than field-of-

use restrictions that do not render the claim any less abstract. *Intell. Ventures I*, 850 F.3d at 1340. And Longitude cannot claim that those restrictions are somehow new or inventive; photographers have adjusted the brightness, contrast, and other aspects of human faces for as long as there have been images.

4. **Claim 10 of the '056 patent.** Claim 10 is directed to the same basic abstract idea as claim 32 of the '365 patent and is phrased in similarly functional terms. According to Longitude, claim 10 recites an "improved color balance correction process" that involves identifying the main object, calculating correction values based on the main object, and applying color balance correction based on those values. *E.g.*, Principal Br. 16, 53. Once again, Longitude identifies the claimed advance over "prior color balance processes" as "tailoring correction based on particular image data *corresponding to the subject*." Principal Br. 54 (emphasis added). Rephrased, claim 10 simply performs ordinary color balancing—well-known in the art—based on the main object rather than "across all the data in the image." Principal Br. 55. That is the same abstract idea to which claim 32 is directed.

Longitude emphasizes that claim 10 contains additional detail, as it states that the correction process uses "pixel values of pixel data" for the main object and "a correction value for color balance correction." Principal Br. 53. But those data types are simply abstract "values" or numbers that are not "concretely limit[ed]" in the

claims. *In re Gopalan*, 809 F. App'x 942, 946 (Fed. Cir. 2020); *see also Interval Licensing*, 896 F.3d at 1345. Longitude also argues that claim 10 improves the accuracy with which the main object is identified in the image by using position information. Principal Br. 55. But that is simply the abstract idea addressed by claim 5 of the '365 patent, strung together with the primary abstract idea of adjusting the image based on the main object's characteristics. *See PersonalWeb Techs.*, 8 F.4th at 1317 (holding that adding one abstract idea to another does not render the combination any less abstract). Similarly, Longitude argues that claim 10 is directed to the problem of "undesirable" main-object color tones produced by adjusting "all data in an image," Principal Br. 54-55, but claim 10's solution to that problem is simply the abstract idea itself—performing color balancing based on the main object rather than the whole image. *Yu*, 1 F.4th at 1044. And claim 10 does not represent an improvement in a computer's technological functioning for the reasons stated above. *See* pp. 33-38, *supra*.[9]

5. **Claim 1 of the '109 patent.** Claim 1 is, according to Longitude, directed to improving the quality (i.e., sharpness) of a person in a portrait scene by adjusting the image based on the main object (i.e., a person). Principal Br. 58. As with claim 32 of the '365 patent, claim 1 employs nothing more than high-level,

---

[9] Longitude has not argued, and thus has waived, any argument that other claims in the '574 patent should be assessed individually.

functional language. It recites an "image processing apparatus" that uses a generic "CPU" to perform three steps: acquiring an image file containing information on the location of the person in the image, increasing the sharpness of the person (i.e., the main object) "based on the acquired location information," and decreasing sharpness elsewhere. *See* Principal Br. 59-60.

At best, this represents a "trivial variation[]" on the abstract idea—adjusting an image based on characteristics of its main object—recited in claim 32. *Trinity,* 72 F.4th at 1362; *see* Appx104 at 1:14-15; *id.* at 1:40-49 (purpose of invention is to improve image processing by using location data of major object). To be sure, claim 1 involves a narrowed set of adjustments and a narrowed set of main objects—but a "narrow" abstract idea is still an abstract idea. *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1353 (Fed. Cir. 2014) (quoting *Mayo Collab. Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 88-89 (2012)). In addition, nothing in claim 1 explains *how* each of its functional steps ("acquiring, "increasing," and "decreasing") is performed—at least not beyond reciting the abstract idea itself.

Longitude contends that claim 1 represents an improvement in computer functioning because it uses a new "image file structure." Principal Br. 59. But claim 1's language, viewed in light of the written description, leaves no doubt that the claim is not in fact focused on any *new* file structure or any specific file structure at all. Appx003, n.1. Claim 1 does provide some detail about the content of the image

file—it must contain "image data, shooting scene information, and location information of a person in the image data." Appx110-111 at 14:63-15:5. But nothing in claim 1 narrows the image file to any particular type of file, any particular data format, or any particular information format. Even a single file is not required—the patent states that an image file encompasses multiple files so long as the necessary data functions "substantially the same as if they are stored in one file." *See* Appx110 at 14:38-57. The written description makes clear that the claimed "image file" is another purely functional term.

In fact, the '109 patent's written description explains that the claimed "image file" is in no way inventive. *See* Appx106-107 at 6:44-7:34. That file limitation covers *any* "image files that are generated by" *any* "input devices"—such as a digital video camera or a scanner. Appx107 at 7:22-26. This means the "data" in that file need not even be static (i.e., image) data: it could be "dynamic" data associated with video files. Appx107 at 7:26-34. Indeed, the patent is crystal clear that "any suitable image file" that can contain the necessary *data* will work—irrespective of the nature of that data. *See* Appx110 at 14:27-37.

Even when the '109 patent discusses a specific file format, it refers to an industry-standard format used in an entirely usual way. *See* Appx106-107 at 6:44-7:21. The preferred embodiments in that patent use a "standard" file format, Appx106 at 6:44-48, that includes "JPEG image data" and some additional "adjunct

information." Appx106 at 6:63-67. This standard file format enables camera manufacturers to add their preferred metadata into an "open" region of the file. *See* Appx107 at 7:6-12. Using that placeholder for its intended purpose, the preferred file format adds into that region "image processing control information CI"—that is, the location data contemplated by claim 1. *See* Appx107 at 7:6-12. And although Longitude emphasizes certain written description language stating that the claimed image file "differs from a typical image file in the Exif format," Principal Br. 60 (quoting Appx106-107 at 6:63-7:16), in fact the written description says that the image file "conforms to [the] Exif file format" or "other" formats used by cameras or scanners. Appx107 at 7:23-26. In short, "image file" includes the enumerated shooting-scene and location data—but it is not a new or improved file format or structure. It might "differ[]" from prior image files in some sense, but nothing about the *file* or its *data contents* is new, inventive, or non-abstract. *See* Appx107 at 7:12-16.[10]

As a result, Longitude's reliance on *Finjan, Inc. v. Blue Coat Sys., Inc.*, is misplaced. 879 F.3d 1299 (Fed. Cir. 2018). There, this Court held that the asserted

---

[10] In fact, it is not even clear that the "shooting scene information" required by claim 1 falls within the open information region. There is another portion of the adjunct information that contains "on-shooting information regarding shooting conditions." Appx106-107 at 6:67-7:6. This point is not, however, necessary to the step one analysis.

claims were directed to a technological improvement because they employed "a *new* kind of file" that had been construed to include "granular information" unlike anything used in virus scanning before. *Id.* at 1304-05 (emphasis added). Critically, the new information included in the file was the result of a novel form of virus scanning that the patentee had "pioneered," and the resulting information placed in the file enabled the user's computer to engage in more flexible virus scanning. *Id.* at 1304. By contrast, here the location data placed in the image file is standard information that is not the product of any novel process, and the file itself is described in entirely generic and non-novel terms.

Claim 1 is therefore more analogous to the claims addressed in *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342 (Fed. Cir. 2021). There, the Court rejected the patentee's reliance on *Finjan*, explaining that *Finjan* had involved a novel virus scanning method that compiled "unique information" that could not be gleaned from traditional virus scans. *Id.* at 1352. The *Universal Secure* Court explained that by contrast, the allegedly "novel form of data" before it was merely "a collection of conventional data combined in a conventional way that achieves only expected results." *Id.* So too here. By the written description's own admission, nothing in the claimed "image file" is new, inventive, or narrowing. It is a conventional file used in its ordinary way as the vehicle for implementing an abstract idea.

Therefore, while the image file may "add a degree of particularity to the claims," it is not a technological improvement, and it is also not the focus of claim 1. *Intell. Ventures I*, 850 F.3d at 1341. "[T]he underlying concept embodied by the limitations merely encompasses the abstract idea itself"—that is, improving the quality of an image by adjusting that image based on the main object. *Id.*; *see Trinity*, 72 F.4th at 1362.

## IV. At *Alice* Step Two, the Asserted Claims Do Not Recite an Inventive Concept.

The district court correctly held as a matter of law that no asserted claim recites an "inventive concept" sufficient to "transform" the claimed abstract idea into patent-eligible subject matter. Appx002-004; *see Alice*, 573 U.S. at 221. With respect to each claim, Longitude identifies only the abstract idea *itself* as the purported inventive concept, and the written description leaves no doubt that the claims involve only generic computing methods, rather than any inventive steps for achieving the patents' stated goals.

Longitude contends at the outset that the lack of an inventive concept is "a *fact* finding" that cannot be made at the pleading stage. Principal Br. 41 (emphasis in original). That is incorrect. The absence of an inventive concept is a legal conclusion that may entail subsidiary factual determinations concerning whether a claim recites only routine and conventional steps. *Berkheimer*, 881 F.3d at 1369. Where, as here, the "undisputed facts, considered under the standards required by

[Rule 12], require a holding of ineligibility under the substantive standards of law," the court must dismiss the complaint.[11] *SAP Am.*, 898 F.3d at 1166.

### A. Longitude Cannot Rely on the Abstract Idea Itself at Step Two.

It is well established that the necessary inventive concept cannot be supplied by the abstract idea itself. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (discussing *Alice*, 573 U.S. at 215); *PersonalWeb Techs.*, 8 F.4th at 1318 (finding no inventive concept because "the purported improvements that PersonalWeb sets forth just restate the abstract ideas discussed above"). After all, step two requires "something *more*" than the ineligible concept that is sufficient to "transform" the nature of the claimed invention. *See id.* (emphasis added)*; BSG Tech*, 899 F.3d at 1290.

Yet for each claim, Longitude identifies only the abstract idea as the purportedly inventive concept. With respect to claim 32 of the '365 patent, for instance, Longitude's brief identifies "using correction conditions corresponding to the properties of the main object" as the inventive concept that "improves upon the existing processes." *Compare* Principal Br. 42-43 (step two), *with* Principal Br. 36-38 (step one). Longitude's complaint is to the same effect: it distinguishes "prior systems," which "processed image data across the board," from the claimed

[11] Longitude did not, and does not, ask for leave to replead. As a result, the Court need not consider whether repleading would be futile. But for all the reasons stated in this brief, it would be.

"invention[]," which "process[es] the image data corresponding to a main object characterizing the digital image." Appx129 (¶ 42); *see also* Appx130-131 (¶¶ 45-46). That "improve[ment]" is the basis on which the '365 patent claims are built—and it represents the abstract idea itself. *See* Appx129-130 (¶ 43); Appx132-133 (¶ 49). That is unsurprising, given that claim 32 is framed in functional terms and "[n]othing in the claim[] indicate[s] what steps are undertaken to overcome" the patent's identified problem. *Intell. Ventures I*, 850 F.3d at 1341-42 (finding absence of inventive concept on this basis).

Longitude's arguments concerning the other asserted claims are virtually identical: each focuses on the abstract idea as the purportedly inventive concept. *See* Principal Br. 44 (claim 5's improvement is "consider[ing] position data corresponding to segments of the image" in order to achieve "image quality benefits"); Principal Br. 50-52 (claim 3's inventive concept is "using correction conditions corresponding to the properties of the face"); Principal Br. 56-58 (claim 10's inventive concept is correcting color balance based on "an image's subject" rather than "across an entire image"); Principal Br. 62-64 (claim 1 more accurately identifies the image's subject). For each, Longitude identifies the portions of the written description that identify the problem to be solved by the patent and restate the basic idea of altering an image based on its main object. *Id.*

No other inventive element appears in the claims. Each asserted claim recites conventional hardware components. Most recite steps that are performed on an "integrated circuit." Appx039 at 28:33-48 (claim 5); Appx040 at 30:27-39 (claim 18, on which claim 19 and 21 depend); Appx041 at 32:27-33 (claim 32). The rest require a "personal computer," an "image processing device," or the like. Appx075 28:8-21 (claim 3); Appx092 at 16:32-56 (claim 10). Similarly, Longitude's complaint does not identify any new piece of hardware.

Likewise, every asserted claim recites conventional computer functions. Collecting and analyzing data are some of the "most basic" computer functions. *See Alice*, 573 U.S. at 225. And the particular types of analysis at issue long predated the asserted claims. As one asserted patent admits, "automatic picture quality adjusting techniques" were conventional. Appx026 at 1:20-21. This included a "standardized picture quality adjusting process" that applied "across the board" for each image. *See* Appx026 at 1:30-35. Nothing about the patent or Longitude's complaint suggests that, when that process is tailored to account for the main object, it involves fundamentally different forms of data analysis or computing functions.

For those reasons, the decisions on which Longitude relies actually illustrate the deficiencies in Longitude's claims. Principal Br. 41. In *CosmoKey Solutions GmbH & Co. KG v. Duo Security LLC*, the Court held that claims directed to the abstract idea of authentication had an inventive concept, which the court identified

as several non-conventional steps in a "particular arrangement" that provided a "technical improvement" over the prior art by enabling authentication to be carried out on low-complexity mobile devices. 15 F.4th 1091, 1099 (Fed. Cir. 2021). This specific, claimed arrangement transformed a claim about authentication into a patent-eligible *application* of authentication. Similarly, in *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, the filtering claims contained an inventive concept because they described a specific ordering of components, and the patent explained how that ordering enabled, for the first time, individually customizable Internet filters installed at a single server location. 827 F.3d 1341, 1348-50 (Fed. Cir. 2016). Here, by contrast, Longitude points only to the abstract idea itself as providing something new—rather than some *other* arrangement of specific steps. *BSG Tech*, 899 F.3d at 1290.

### B. Longitude's Separate Arguments about Claim 1 of the '109 Patent Are Meritless.

Longitude contends that claim 1 of the '109 patent is the exception because it recites an image file containing certain location and scene data. Principal Br. 62-63. As discussed above, that claim is focused on the same abstract idea recited in each of the other asserted claims: that is, improving image quality using various properties of the main object. But the image file does not amount to an "inventive concept" sufficient to "transform" the nature of that claim because the patent itself establishes as a matter of law that the image file is conventional and generic.

To be sure, Longitude's complaint alleges that the claim represents "new, improved image data processing systems and operations that use a *particular image data structure* including image data, shooting scene information, and location information of a person in the image to process the image." Appx154 (¶99). But nowhere does the complaint allege that either the "particular image data structure" or the data contained in the file (i.e., shooting scene and location information) are new or unconventional. *See, e.g.*, Appx153 (¶¶ 95-96); Appx154-155 (¶¶ 99-101); Appx156 (¶ 103). Instead, what is allegedly "new" about claim 1 in the '109 patent is its "data processing system," which "modif[ies] digital image data based on its subject." Appx153 (¶95). Put more simply, the purportedly "new" part of claim 1 is nothing more than the abstract idea discussed above.

The written description confirms that the "image data structure" and data contained in the file are not new or unconventional. As discussed above, the written description explains that the claims encompass (but do not require) using an industry-standard image file format and contemplate adding metadata for shooting scene and location information into an open portion of the file intended for preferred metadata. Appx106-107 at 6:44-7:21; Appx107 at 7:6-12. The inclusion of that conventional metadata does not make the file's structure or contents new or inventive. *See* Appx107 at 7:12-16. To the contrary, the written description makes clear that the image file uses only what was "well-known to persons skilled in the

art." Appx107 at 7:16-21. Finally, contrary to Longitude's argument, Principal Br. 63, nothing about the "intrinsic record" indicates a factual dispute requiring vacatur; the written description leaves no doubt that the image file and its contents are not new or unconventional.[12] In these circumstances, this Court has repeatedly affirmed dismissal on the pleadings. *See, e.g.*, *PersonalWeb Techs.*, 8 F.4th at 1319; *SAP Am.*, 898 F.3d at 1169.

## CONCLUSION

For the foregoing reasons, the Court should affirm.

DATED: March 25, 2024

MUNGER, TOLLES & OLSON LLP

By: */s/ Ginger D. Anders*
Ginger D. Anders
*Counsel for Google LLC*

---

[12] For that reason, even if the complaint alleged that the claimed "image file" was new, those allegations would be contradicted by the patent itself and therefore properly disregarded. Appx003 n.1; *see Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017).

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1), because it contains 13,644 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

DATED: March 25, 2024 By: /s/ *Ginger D. Anders*
Ginger D. Anders

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system on March 25, 2024.

I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

DATED: March 25, 2024

By: /s/ *Ginger D. Anders*
Ginger D. Anders