**Appeal No. 2024-1202**

# United States Court of Appeals for the Federal Circuit

**LONGITUDE LICENSING LTD.,**

*Plaintiff-Appellant,*

v.

**GOOGLE LLC,**

*Defendant-Appellee.*

Appeal from the United States District Court for the Northern District of California, Case No. 3:23-cv-03046-VC

## APPELLANT LONGITUDE LICENSING LTD.'S REPLY BRIEF

Aaron R. Fahrenkrog
Emily J. Tremblay
Samuel J. LaRoque
William Jones
ROBINS KAPLAN LLP
800 LaSalle Avenue
Suite 2800
Minneapolis, MN 55402-2015
Tel: (612) 349-8500

*Counsel for Plaintiff-Appellant Longitude Licensing Ltd.*

April 22, 2024

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................1

I. LONGITUDE APPLIES THE CORRECT LEGAL STANDARD, AND GOOGLE COMMITS FUNDAMENTAL LEGAL ERRORS. .......................................................................1

A. Google applies an erroneous legal standard to the Court's use of the specification in the § 101 analysis. ...........................2

B. Google misstates Longitude's explanation of the role of intrinsic and extrinsic evidence..................................................7

II. THE EVIDENCE—THE CLAIMS AND THE SPECIFICATIONS—CONFIRMS THAT LONGITUDE'S CLAIMS ARE DIRECTED TO COMPUTING IMPROVEMENTS USING UNCONVENTIONAL DIGITAL IMAGE DATA PROCESSING OPERATIONS AND DATA TYPES. ..........................................................................................10

A. '365 patent claim 32 recites a particular computing technique to improve prior digital image data adjusting techniques: it adjusts main object image data using correction conditions corresponding to that data's properties. ..........................................................................11

B. '365 patent claim 5 recites a different computing technique to improve prior digital image data adjusting techniques: it determines the main object using image and position data. ......................................................................15

C. The '574 patent claims a particular computing technique to improve prior digital image data adjusting techniques: it adjusts main object image data including a human face using correction conditions corresponding to that data's properties. ..........................................................................17

D. The '056 patent claims a particular computing technique to improve prior digital image data color balance correction techniques: it calculates and uses correction

values based on a specific subject characteristic value and a preset characteristic value. ....................................................18

E. The ’109 patent claims a particular image file and computing technique to improve prior digital image data processing techniques: it uses an image file including image data, shooting scene information, and location information. ....................................................19

III. GOOGLE’S CITED CASES DO NOT APPLY TO LONGITUDE’S CLAIMS IN VIEW OF THE EVIDENCE DEMONSTRATING THAT THE CLAIMS RECITE COMPUTING IMPROVEMENTS. ....................................................21

A. Longitude’s patents claim specific computing improvements to prior digital image data processing techniques, not “organizing information.” ....................................................22

B. Longitude’s patents do not claim performing mental processes on a computer. ....................................................25

C. Longitude’s claims do not recite only “functions” or results—they recite how to achieve improved digital image data adjustments based on the image’s main object/subject. ....................................................29

CONCLUSION ....................................................34

# TABLE OF AUTHORITIES

## Cases

*Ancora Techs., Inc. v. HTC Am., Inc.*,
908 F.3d 1343 (Fed. Cir. 2018)....................4

*CardioNet, LLC v. InfoBionic, Inc.*,
955 F.3d 1358 (Fed. Cir. 2020).................... passim

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019).................... 1, 2, 3, 23

*CosmoKey Sol'ns GmbH & Co. KG v. Duo Security LLC*,
15 F.4th 1091 (Fed. Cir. 2021) ....................4

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016).................... 2, 7, 30

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)....................4

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018)....................4

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
60 F.4th 1349 (Fed. Cir. 2023) ....................30

*In re Gopalan*,
809 F. App'x 942 (Fed. Cir. 2020) ....................30

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
50 F.4th 1371 (Fed. Cir. 2022) ....................23

*Interval Licensing LLC v. AOL, Inc.*,
896 F.3d 1335 (Fed. Cir 2018)....................24

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016).................... passim

*Plotagraph, Inc. v. Lightricks, Ltd.*,
2024 WL 223185 (Fed. Cir. Jan. 22, 2024) ....................26

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017)....................24

*Trinity Info Media, LLC v. Covalent, Inc.*,
72 F.4th 1355 (Fed. Cir. 2023) .................... 25, 26

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017).................... 29, 30

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
957 F.3d 1303 (Fed. Cir. 2020)....................1

*Universal Secure Registry LLC v. Apple, Inc.*,
10 F.4th 1342 (Fed. Cir. 2021) ....................23

*Visual Memory LLC v. NVIDIA Corp.*,
867 F.3d 1253 (Fed. Cir. 2017).................... 4, 29, 31, 32

*Yu v. Apple, Inc.*,
1 F.4th 1040 (Fed. Cir. 2021)....................6

## ARGUMENT

In its Response, Google (1) makes fundamental legal errors that lead it to (2) make errors in its analyses of Longitude's claims and to (3) rely on cases not analogous to the claims and underlying facts here. Longitude addresses these errors in the three sections below.

### I. LONGITUDE APPLIES THE CORRECT LEGAL STANDARD, AND GOOGLE COMMITS FUNDAMENTAL LEGAL ERRORS.

Longitude articulated and applied the correct legal standard in its principal brief: the Court determines § 101 eligibility as a matter of law, based on underlying facts, and considers the intrinsic evidence—the claim language and the specification—in that inquiry. Principal Br. 28-34; *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306-08 (Fed. Cir. 2020); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765, 767 (Fed. Cir. 2019). Longitude did not "reformulate" these established principles, as Google alleges. Response Br. 16-17, 19.

Indeed, the parties agree on the Court's familiar legal framework for applying *Alice*. In particular, Longitude agrees with Google's formulation of "the critical task" here—"to distinguish between non-abstract 'computer-functionality improvements' and abstract, ineligible improvements in 'uses of existing computers as tools in aid of processes focused on abstract ideas.'" Response Br. 20

(quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016)).

Google, however, errs in articulating and applying material aspects of that legal framework. First, Google incorrectly diminishes the specification's role of providing guidance as to whether the claims recite a computing improvement. Second, Google misstates (and thus misapplies) Longitude's correct articulation of how the Court weighs the intrinsic evidence, as set forth in *CardioNet*. Flowing from these errors, throughout its argument Google (like the district court) improperly dismisses how the Longitude patents describe the claimed limitations, and Google instead manufactures its own facts as a substitute.

### A. Google applies an erroneous legal standard to the Court's use of the specification in the § 101 analysis.

The parties disagree about how the Court should apply its legal framework to *evidence* regarding the claimed inventions—most important, the specification. Google commits a fundamental error here, which pervades its analysis. Google incorrectly diminishes the role of the specification in the Court's § 101 precedent. Response Br. 16, 22-23. The Court considers the specification to construe the claims where necessary, as Google concedes. Response Br. 16. But the Court also considers the specification "to understand the problem facing the inventor and, ultimately, what the patent describes as the invention," which Google does not address. *ChargePoint*, 920 F.3d at 767 (quotation omitted).

The Court thus analyzes the claimed limitations based on the specification's description of those limitations to evaluate whether the claim provides a patent-eligible computing improvement. *Id.* (performing independent analyses of the specification for claim construction and for technical benefits of the invention). Thus, Google misstates the law in concluding that "the written description is relevant only to the extent it sheds light on the claims' scope." Response Br. 16. Indeed, the Court also looks to the specification to determine whether the claimed invention "is improved from a technical perspective" or "involved overcoming some sort of technical difficulty." *ChargePoint*, 920 F.3d at 768.

Google further compounds its legal error when it argues that the specification "must always yield to the claim language," Response Br. 23, because Google omits the critical context that this principle applies where "technical details" from the specification "*are not claimed*." *Id.* at 769 (emphasis added). Google not only ignores the role the Court affords the specification in understanding the claims, it also erroneously suggests that the Court should *disregard* the specification's guidance in understanding how the inventor envisioned that the claimed invention would solve problems with existing computer systems and thereby improve their performance or results.

Where—as in Longitude's claims—the claim recites a computing process that achieves an improvement over prior computing technologies, and the

specification confirms that the claimed process provides a computing improvement, the Court weighs those claimed details in favor of eligibility under both *Alice* steps. *See, e.g.*, *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016); *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372-73 (Fed. Cir. 2020); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018); *CosmoKey Sol'ns GmbH & Co. KG v. Duo Security LLC*, 15 F.4th 1091, 1095 (Fed. Cir. 2021); *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259-60 (Fed. Cir. 2017). As Longitude explained in its principal brief, where the specification explains how the specific recited claim limitations improve prior computing processes directed to similar goals—by improving performance or producing better results—the Court has held such claims patent-eligible. Principal Br. 31-34.

At step two, the Court necessarily considers the specification for facts about the conventionality of the claim, because the district court cannot find claims ineligible under Rule 12(b)(6) unless "the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1347 (Fed. Cir. 2018) (quotation omitted). At the Rule 12(b)(6) stage, such "undisputed facts" must come from the intrinsic record (primarily, the

specification), the patent owner's concessions, or extrinsic evidence "overwhelming to the point of being indisputable," as set forth in *CardioNet*, 955 F.3d at 1370-73. Google appears to agree with this evidentiary requirement at step two, asserting that courts can resolve the inventive concept inquiry as a matter of law where "[t]he patent itself may establish that the claims contain no inventive concept." Response Br. 24.

Because Google does not apply the specification's proper role in providing evidence as to the technical advancement that the claim provides, Google improperly dismisses analogous cases, like *Enfish* and *McRO*, and instead relies on distinguishable cases in which the claims did not provide technological improvements and the specification guided the Court's analysis because (1) it included no description of how the claim limitations provided a computing improvement, (2) it described only *unclaimed* technical improvements, and/or (3) it affirmatively explained that the claim limitations recited only longstanding activity or conventional operations and *not* a computing improvement.

| | Patent does not describe technical improvement | Patent describes, but does not claim, technical improvement | Patent or other evidence describes claim as conventional |
|---|---|---|---|
| ChargePoint | X | | |
| Electric Power Group | X | | X |
| Hawk | | X | X |
| Interval Licensing | X | | X |
| Plotagraph | X | | |
| RecogniCorp | X | | |
| Sanderling* | X | | |
| Trinity | X | | X |
| Two-Way Media | | X | |
| Yu | | X | X |

**Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698 (Fed. Cir. 2023); all other case citations provided *infra*.

For example, Google relies on *Yu v. Apple*, in which the Court determined that although the specification may have described a computing improvement, the claim did not recite that improvement, and the claim instead recited a technique that the specification described as conventional. *Yu v. Apple, Inc.*, 1 F.4th 1040, 1044 (Fed. Cir. 2021). In *Yu*, the specification described the advance over the prior art as "a four-lens, four-image-sensor configuration in which three of the sensors are color-specific while the fourth is a black-and-white sensor." *Id.* The claim, however, did not recite limitations providing the technical advancement: "[y]et representative claim 1 requires only a two-lens, two-image-sensor configuration in which none of the image sensors must be color." *Id.* The claim language did not

recite the advancement disclosed in the specification, and thus the specification itself demonstrated that the claim was not directed to a non-abstract computing improvement. *Id.* at 1044-45.

As another example, in *Electric Power Group*, the Court's step two analysis cited specification evidence indicating that the claims recited only "existing . . . data sources" and showing that any "new algorithms [were] not claimed." *Elec. Power Grp.*, 830 F.3d at 1355. Like *Yu*, the specification in *Electric Power Group* demonstrated that the claim recited the conventional arrangement, not the purported invention.

In contrast, as discussed in the principal brief and below, Longitude's claims recite the limitations that the specification describes as providing technical improvements over prior computing processes, which differentiates Longitude's claims from Google's cases. The Court's precedents addressing similar evidence—like *Enfish*, *McRO*, and *CosmoKey*—are analogous, on an *evidentiary* basis, to this case. Google misapplies the Court's precedents, and the cases it cites are not analogous here.

### B. Google misstates Longitude's explanation of the role of intrinsic and extrinsic evidence.

Google also mischaracterizes Longitude's (and the Court's) articulation of the role of intrinsic evidence. Google begins its argument by asserting:

> Longitude suggests that claims may be found abstract only if the court finds based on **"overwhelming" *intrinsic* evidence** that they are directed to automating longstanding human activity, which Longitude characterizes as a finding of fact. Principal Br. 31; *see also* Principal Br. 29-33. That is wrong on several counts.

Response Br. 16 (emphasis added). Longitude said no such thing. Instead, Longitude explained, based on the Court's analyses in cases like *McRO* and *CardioNet*:

> The Court may affirm the dismissal only if **the intrinsic record or "overwhelming" *extrinsic* evidence** indisputably supports the conclusion that the **claimed** embodiments recite only longstanding practices automated using conventional computing activities.

Principal Br. 33 (emphasis added). As to Google's assertion that step one does not involve any fact finding, the Court in *CardioNet* said that it *may* (which Google does not address):

> But the written description does not disclose that doctors performed the same techniques as the claimed device in diagnosing atrial fibrillation or atrial flutter. Indeed, as discussed above, nothing in the record supports the district court's **fact finding** (and InfoBionic's assertion) that doctors long used the claimed diagnostic processes.

*CardioNet*, 955 F.3d at 1370-71 (emphasis added). The Court further explained that *extrinsic* evidence cannot establish a finding of "automating a fundamental practice" at step one unless it "is overwhelming to the point of being indisputable"—as Longitude stated. *Id.* at 1373-74; Principal Br. 31, 33. Here, the

record contains no extrinsic evidence, and Google's anecdotal attorney arguments about painting and photography cannot constitute "overwhelming" or "indisputable" evidence to justify a finding that the claims simply automate conventional practices.

Google's argument begins with its faulty characterization of Longitude's analysis and with Google's own legal error about the specification's role, and those errors persist throughout Google's analysis, in its general characterizations of Longitude's claims and its reliance on inapposite cases. Applied properly, the Court's precedents lead to one conclusion here: the intrinsic evidence establishes that the claims recite patent-eligible improvements to prior computing systems, and the district court had no evidence, intrinsic or extrinsic, to conclude that Longitude's claims recite human activity or conventional operations. In every previous case where similar intrinsic evidence existed, the Court weighed the evidence supporting eligibility against evidence indicating ineligibility. Weighed properly here, the specifications of Longitude's patents justify a finding of eligibility and reversal of the district court's judgment.

## II. THE EVIDENCE—THE CLAIMS AND THE SPECIFICATIONS—CONFIRMS THAT LONGITUDE'S CLAIMS ARE DIRECTED TO COMPUTING IMPROVEMENTS USING UNCONVENTIONAL DIGITAL IMAGE DATA PROCESSING OPERATIONS AND DATA TYPES.

The claims and the specifications show that Longitude's claims are directed to computing improvements (*Alice* step one). Even if the Court determines that the claims are directed to "improving image quality by adjusting various aspects of an image based on features of the main object in the image," the evidence shows that the claims recite specific operations using unconventional data to achieve improved digital image data processing (*Alice* step two).[1]

Google acknowledges the claim language but then generalizes the claims to the point that the claimed operations and data types lose their plain meaning, particularly in view of the specifications. Google sets aside the evidence supporting eligibility and does not address how the specifications describe the claims in view of the art. Contrary to Google's conclusory, unsupported (often factual) assertions, the specifications provide that the claimed operations using the claimed data types are unconventional and, thus, provide technical benefits over prior computing techniques. The claims are patent-eligible.

---

[1] None of Longitude's claims covers all ways of "adjusting various aspects of an image based on features of the main object in the image." That a claim does *not* preempt all ways of accomplishing its result suggests that the claim is eligible. *See McRO*, 837 F.3d at 1314-15.

### A. ’365 patent claim 32 recites a particular computing technique to improve prior digital image data adjusting techniques: it adjusts main object image data using correction conditions corresponding to that data’s properties.

The ’365 patent describes existing “automatic picture quality adjusting techniques” and then describes and *claims* how to improve those techniques. Appx026 at 1:11-40. The specification provides that computing processes that adjusted digital image data existed before the ’365 inventions—they “adjust[ed] picture quality using standard values without the need for user input.” *Id.* at 1:12-19. The specification explains that those existing computing processes used only “a standardized picture quality adjusting process” and, thus, could not “carry out a picture quality adjusting process that takes advantage of the subtle characteristics of the main object.” *Id.* at 1:30-40.

According to the ’365 patent—the only evidence before the Court—claim 32 provides a computing process that “improve[s] the picture quality of the main object characterizing an image” compared to prior computing techniques. *Id.* at 1:44-48. Rather than recite only a result—e.g., adjusting digital image data based on its main object—claim 32 recites *how* to achieve adjustments “more responsive to variations in main objects”: by performing specific operations using new data—correction conditions corresponding to properties of determined main object image data—to achieve tailored, rather than “standardized,” adjustments. *Id.* at 1:30-48; Appx041 at 32:23-33.

Adjusting digital image data using correction conditions corresponding to properties of determined main object image data is a new modification to prior computing techniques. Appx026 at 1:30-40. And the claimed operations using the claimed data provide an improved computing process that generates improved results compared to prior digital image data adjusting techniques. *Id.*; *see, e.g.*, Appx023 at 14:51-61 (noting that correction conditions "permit[] more suitable adjusting of the picture quality according to the properties of the main object"). Correction conditions, understood in light of the specification, are specific values that correspond to the main object image data properties and facilitate particular corrections to the main object image data—for example, "to eliminate or reduce differences between the correction standard values and the property values of the main object image data." Appx033 at 15:1-7; *see also* Principal Br. 6-9.[2] Figure 15 illustrates how the claimed adjusting technique acquires main object image data properties (e.g., the main object's classification color value) and adjusts image data

[2] Claim 19 recites particular correction conditions—correction standard values—and eliminating or reducing the difference between the main object image data property values and the correction standard values. Appx040 at 30:40-47. Though the parties did not argue claim 19 to the district court, the district court nevertheless implicated all claims in its analysis. Appx002-003. Addressing important distinctions among the claims here, on appeal, is appropriate in view of the district court's order.

using correction conditions corresponding to those properties (e.g., a correction standard level, which corresponds to a particular classification color value):

Fig.15

| CLASSIFIED MAIN OBJECT | CLASSIFICATION COLOR VALUE | CORRECTION STANDARD LEVEL |
|---|---|---|
| BRIGHT SKY | Hcsb, Scsb, Bcsb | CONTRAST b, BRIGHTNESS b, COLOR BALANCE b |
| ORDINARY SKY | Hcsn, Scsn, Bcsn | CONTRAST n, BRIGHTNESS n, COLOR BALANCE n |
| DARK SKY | Hcsd, Scsd, Bcsd | CONTRAST d, BRIGHTNESS d, COLOR BALANCE d |

Determined Main Object

Main Object Image Data Properties

Correction Conditions Corresponding to Properties

Appx019 at Fig. 15 (annotations added). Claim 32 does not, as Google suggests, cover only an idea or a result. Nor does claim 32 preempt all processes for adjusting digital image data based on the image's main object. Claim 32 covers a specific way to adjust main object image data using correction conditions corresponding to properties of determined main object image data.

Longitude thus does not, as Google contends, read limitations into claim 32 or rely on unclaimed technical details that the specification describes. The claim recites specific operations using new data and relationships among those data—operations and data that prior adjusting techniques did not employ—to facilitate tailored, rather than "standardized," adjustments.

Google offers claim interpretations divorced from and contrary to the plain claim language and the specification. For example, Google broadens correction conditions and main object image data properties to "broad concepts" and generic terms, without support. *See, e.g.*, Response Br. 28. In dismissing those key claim limitations as too broad to matter, Google also applies its fundamental legal error and dismisses the evidence that describes those claimed data types as critical to achieving an improved adjusting technique. Google offers alternative, conclusory "facts"—for example, that the claim recites only "typical adjustment methods, in a typical way." Response Br. 27. But the specification provides the opposite. *See supra*. Indeed, to make its points, Google must argue *against* these teachings and manufacture contrary "facts," contravening the Court's paradigm for weighing evidence, set forth in *CardioNet*. *See, e.g.*, Response Br. 36 (arguing, without citation and without acknowledging contrary record evidence, that using correction conditions is no "different than ordinary, common ways of adjusting image data based on standard properties"); *cf. CardioNet*, 955 F.3d at 1370-71, 1373-74. Google cannot debate the facts that the patent provides, not at Rule 12.

Google concludes that the claims are directed to "longstanding human activity" or "mental processes," but the evidence establishes that claim 32 recites a computing improvement. Claim 32 is thus not directed to an abstract idea. Indeed, claim 32 recites an improved *computing process* that includes, for example,

specific operations using specific data, including correction conditions that correspond to properties of determined main object image data. Google offers speculation and strained logic, without evidence, to argue that a human can acquire (in their mind) "properties" representing color or statistical values of a painting and then can acquire (again in their mind) "correction conditions corresponding to" those properties. But the claim recites *objective* rules using specific data types and removes *subjective* input from the process, *see McRO*, 837 F.3d at 1314-15, which stands in stark contrast to the mental processes that an artist employs when deciding how to touch up a painting. The claimed operations and data types eliminate subjective judgment and thus enable an improved *computing technique* that produces more accurate/attractive digital images compared to prior computing techniques.

### B. '365 patent claim 5 recites a different computing technique to improve prior digital image data adjusting techniques: it determines the main object using image and position data.

The '365 patent describes another aspect of existing "automatic picture quality adjusting techniques" and then describes and claims how to improve those techniques—specifically, how to avoid errors in determining the image's main object. Appx026 at 1:20-29. In existing computing techniques, "picture quality [was] adjusted on the assumption that the main object characterizing the image has

been correctly determined"—the technique did not "properly analyze the characteristics of the image data." *Id.*

According to the '365 patent, claim 5 provides a computing process that more accurately determines an image's main object. Appx039 at 28:33-47. Rather than recite only a result, claim 5 recites how to achieve more accurate determinations: by performing specific operations using specific data—image data (for example, color) and position data—to distinguish between objects. *Id.*; *see also* Principal Br. 10-13.

Longitude does not, as Google contends, read limitations into claim 5 or rely on unclaimed technical details that the specification describes. Understood in light of the specification, the claim recites using new data that prior techniques did not use, to facilitate more accurate main object determinations. *See, e.g.*, Appx031 at 11:15-28. Again, Google sets aside the evidence establishing that the claimed operations provide a new, improved computing process, and Google offers no evidence that the claimed techniques are conventional or do *not* provide improvements over prior techniques.

Because the evidence shows that claim 5 recites a computing improvement, claim 5 is not directed to an abstract idea. Moreover, Google's suggestion that a human could perform the claim in their mind glosses over key distinctions between subjective judgment and computing operations and data types that remove

subjective judgment from the equation, thus employing computing techniques as more than a mere tool. A human does not, as Google suggests, create "a basic grid system" in their mind and analyze image data and position data.

### C. The '574 patent claims a particular computing technique to improve prior digital image data adjusting techniques: it adjusts main object image data including a human face using correction conditions corresponding to that data's properties.

Like '365 claim 32, '574 claim 3 recites *how* to achieve digital image data adjustments "more responsive to variations in main objects": by performing specific operations using new data—correction conditions corresponding to main object image data properties (in claim 3, the main object includes a human face)—to provide tailored, rather than "standardized," adjustments. Appx075 at 28:8-21.

The specification provides that the claimed computing process improves prior digital image data adjusting techniques, facilitating more accurate renderings true to, for example, particular skin tones. Principal Br. 13-15. And again, using correction conditions corresponding to properties of determined main object image data is new. No evidence suggests that prior digital image data adjusting techniques used correction conditions; the specification provides the opposite. Appx062 at 1:38-48.

### D. The ’056 patent claims a particular computing technique to improve prior digital image data color balance correction techniques: it calculates and uses correction values based on a specific subject characteristic value and a preset characteristic value.

The ’056 patent describes an existing “typical color balance correction method” and then describes and claims how to improve that technique. Appx085 at 1:12-19. The specification provides that before the ’056 inventions, digital image data color balance correction techniques “correct[ed] each color component so that the average color of the overall image becomes colorless (white or gray).” *Id.* But those techniques produced undesirable results, for example, suppressing background blues (to push towards neutral/white) would overcorrect a human subject and render the subject red-tinged. *Id.* at 1:25-33.

According to the ’056 patent, claim 10 provides an improved computing process, correcting color balance using new data and operations to improve the subject’s appearance. *Id.* at 1:37-2:3. And rather than recite only a result, claim 10 recites *how* to “correct the color balance according to the specific subject characteristic”: by determining the image’s subject using pixel values and position data related to a target area, calculating a specific subject characteristic value (e.g., average pixel color), and calculating and using a correction value based on the specific subject characteristic value and a preset characteristic target value. Appx085 at 2:1-3; Appx092 at 16:32-57; *see also* Principal Br. 15-19.

Prior color balance correction techniques did not perform these steps. They did not determine the image's subject using pixel values and position data, as claimed, which "improve[s] the precision of determining the specific subject area." Appx086 at 3:24-33. Nor did prior techniques calculate or use specific subject characteristic values, preset characteristic values, or correction values tied to the characteristic value, which "improve[s] the appearance of a subject having [a] specific color." Appx085 at 2:34-41.

Again, Google dismisses the specification's description of the claimed limitations and offers conclusory facts in its place. *See, e.g.*, Response Br. 46 (arguing that "claim 10 simply performs ordinary color balancing—well-known in the art"). Google argues, without support, that the claimed data types—including pixel values and correction values—are unlimited, abstract values. *Id.* at 46-47. But the specification belies Google's conclusory suggestions: using the claimed data—not just any information, but pixel values and correction values—improves prior computing techniques that did not determine or correct the image's subject using that data. *See, e.g.*, Appx085 at 1:37-2:3, 2:34-41.

### E. The '109 patent claims a particular image file and computing technique to improve prior digital image data processing techniques: it uses an image file including image data, shooting scene information, and location information.

The '109 patent describes existing computing techniques to locate and process a digital image's "emphasis region" and then describes and claims how to

improve those techniques. Appx104 at 1:19-36. Existing computing techniques assumed that the image's "major object" was the "central region of an image" and attempted to adjust the digital image data based on that assumption. *Id.*

According to the '109 patent, claim 1 provides an improved computing technique using new image file data and information to locate the emphasis region. And rather than claim only the intended result, claim 1 recites *how* to identify "an appropriate emphasis region for every image data": by using shooting scene information and location information of the person in the image data. Appx110-111 at 14:63-15:5.

According to the specification (and contrary to Google's speculation), prior image files did not include shooting scene information and location information. Appx104 at 1:19-36; Appx106-107 at 6:44-7:34. Claim 1 recites that structure, and using shooting scene information and location information "improve[s] the accuracy of image processing by setting and using an appropriate emphasis region for every image data." Appx104 at 1:40-43.

Again, Google dismisses the specification's description of the claimed limitations and relies instead on its generic themes. Google revisits its "functional language" thesis, even though claim 1 recites an image file having particular data and information. Google offers conclusory facts, this time misrepresenting the specification to try to manufacture support for its "facts." Google argues that the

claimed image file is "in no way inventive" and that "nothing about the *file* or its *data contents* is new, inventive, or non-abstract." Response Br. 49-50. Those are unsupported facts. The specification provides the opposite, that the image file contents are new and inventive: "an image file GF that is generated in the present embodiment *differs from a typical image file in Exif format* in that the image file GF comprises image processing control information CI in its Makernote data storage region 113." Appx107 at 7:12-16 (emphasis added).[3] Google tries to dispute these facts, all but confirming that the district court should not have granted the Rule 12 motion.

## III. GOOGLE'S CITED CASES DO NOT APPLY TO LONGITUDE'S CLAIMS IN VIEW OF THE EVIDENCE DEMONSTRATING THAT THE CLAIMS RECITE COMPUTING IMPROVEMENTS.

Google fails to compare the facts at issue in its cited cases to the facts at issue here, the facts describing Longitude's claims. Google does not analyze Longitude's claims in view of their specifications and instead offers only high-level § 101 principles, arguing—without the requisite analysis—that the claims are abstract because they (1) are directed to organizing information, (2) automate mental processes, or (3) recite functional language. Those generalized

---

[3] Generating an image file consistent with a known file format does not mean that its improved contents—including shooting scene information and location information—are not new technical improvements to prior, inferior file structures. Indeed, the specification notes that an otherwise *undefined* region in an image file can store the new, not-previously-included information. Appx107 at 7:6-16.

arguments do not apply here because Longitude's claims improve prior digital image data processing techniques, as the specifications explain. Cases in which the claims provide computing improvements and the specification describes those improvements (see Longitude's claim analysis, § II, *supra*)—including *Enfish*, *McRO*, *CardioNet*, *Finjan*, *CosmoKey*, and *Visual Memory*—are the analogous cases. Like those cases, the specifications here describe the claimed inventions and show that those claims recite computing improvements.

### A. Longitude's patents claim specific computing improvements to prior digital image data processing techniques, not "organizing information."

Longitude's claims recite performing specific operations using specific data to better adjust digital image data and thus do not claim only organizing information. Longitude's specifications explain (and support Longitude's claim analysis, § II, *supra*) that prior digital image data adjusting techniques did not perform the claimed operations using the claimed data, and that those specific operations and data types improve the prior techniques. This type of evidence confirming that the claims recite a computing improvement is absent from Google's "organizing information" cases. Looking past Google's soundbites and conclusory arguments, the evidence at issue in Google's cases—e.g., the claims and how the specifications described the claims—showed that the claims used a computer only as a tool for organizing information.

Case in point: *ChargePoint.* In *ChargePoint*, the claims recited, in relevant part, "a transceiver to communicate requests for charge transfer with a remote server." *ChargePoint*, 920 F.3d at 766. The claims covered any networked charging stations. *Id.* at 768-69. In evaluating those claims in view of the specification, the Court determined that the inventor intended to provide just that: "*network-controlled* charging stations." *Id.* at 768. The Court determined that the specification "never suggest[ed] that the charging station itself is improved from a technical perspective" or that "the invention involved overcoming some sort of technical difficulty in adding networking capability to the charging stations." *Id.* at 768. The claims did not recite new operations or data types to improve prior computing techniques.

The claims in Google's other "organizing information" cases provided no computing improvements, either—the specifications confirmed as much. *See, e.g.*, *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1378 (Fed. Cir. 2022) ("[T]he claims and specification do not disclose a technical improvement or otherwise suggest that one was achieved."); *Universal Secure Registry LLC v. Apple, Inc.*, 10 F.4th 1342, 1352 (Fed. Cir. 2021) ("There is no description in the patent of a specific technical solution by which the biometric information or the secret information is generated, or by which the authentication information is generated and transmitted."). In several cases, the specifications *established* that

the claims recited only conventional operations and/or data. *See, e.g.*, *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir 2018) (noting that the "specification itself makes clear that the instructions limitations are generic and cover established ways to access information, organize information, and then display information"); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (noting that the patent *claimed* what the specification described as "a common technique for synthesizing single images of faces involv[ing] horizontally dividing the image of a face into bands for different features").

The parties agree that the idea of organizing information is abstract under established § 101 law. But Longitude's claims, on their face, do not recite organizing information. Rather, the claims, in view of their specifications, recite performing specific computing operations using new, specific data types. And the specifications establish that those claimed operations and data generate improved digital images, compared to prior digital image data adjusting techniques. Google's "organizing information" cases are not analogous. In no case that Google offers did evidence describe how the claimed system or steps improved computing functionality. In contrast, because Longitude's claims achieve improved digital image data adjustments (*see* Principal Br. 31-34; § II, *supra*), as the specifications teach, Longitude's claims are not directed to "organizing information."

### B. Longitude's patents do not claim performing mental processes on a computer.

Longitude's claims recite more than performing mere mental processes on a computer. A human cannot perform the claimed operations. A claim provides a patent-eligible computing improvement when, for example, it removes subjective judgment from the process and, thus, provides a computing advancement rather than merely employing a computer as a tool. *See McRO*, 837 F.3d at 1314. Longitude's claims do exactly that: they recite how to achieve improved digital image data adjustments by performing operations using specific, never-before-used data (e.g., correction conditions corresponding to main object image data properties, shooting scene information, location information) rather than subjective judgment. In contrast, the evidence in Google's "mental process" cases confirmed that the claims merely used computers as tools to automate longstanding processes that a human could perform in their mind. Cases with analogous *evidentiary* records to this one, like *Enfish*, *McRO*, *Visual Memory*, and *CardioNet*, show that Longitude's claims are patent-eligible.

*Trinity Info Media, LLC v. Covalent, Inc.* is typical of Google's "mental process" cases. There, the claims recited a polling system, including receiving generic "user information" and answers to polling questions, storing and comparing answers, and displaying matching user information. 72 F.4th 1355, 1359 (Fed. Cir. 2023). The specifications confirmed that the claims "focus[ed] on

the details of receiving and comparing answers to generate matches," an abstract idea. *Id.* at 1363. The Court concluded that the specifications "frame[d] the inventor's problem in terms of how to improve existing polling systems by performing progressive polling, not how to improve computer technology." *Id.* Those claims, on their face, recited a technique employing a computer as a tool, and the specification confirmed the same.

*Plotagraph, Inc. v. Lightricks, Ltd.* is also distinguishable. There, the claim recited little more than receiving "starting point" information and a user-input direction, and using a computer to shift a set of pixels in that direction. 2024 WL 223185, at *1 (Fed. Cir. Jan. 22, 2024). And the specification consistently described the claimed invention not as a computing improvement but as "a way to create the illusion of movement." *Id.* at *3. Therefore, the claim "simply perform[ed] more efficiently what could otherwise be accomplished manually." *Id.* at *4.

Here, Longitude's claims recite, and the specifications describe, data types and operations using those data types that improve prior computing techniques. *See* § II, *supra*. And those operations and data types remove subjective judgment from the process. As in *McRO*, removing subjective judgment is a tell-tale sign that the claimed invention provides more than automating a mental process using a computer as a tool. The claims here are therefore like those in *McRO* (as addressed

in Longitude's principal brief) and *CardioNet*, where this Court relied on the specifications in reversing the district courts' findings that the claims simply automated longstanding mental processes.

In *CardioNet*, this Court reversed the district court's Rule 12(b)(6) dismissal because the district court relied on the "incorrect assumption that the claims [were] directed to automating known techniques," noting that "the district court erred by disregarding the written description's recitation of the advantages of the claimed invention." 955 F.3d at 1370-71. Important to the Court's holding, there was "no suggestion in the [] patent's written description that doctors were 'previously employing' the techniques performed on the claimed device." *Id.* at 1370. The Court observed that nothing in the record "support[ed] the district court's fact finding (and [defendant's] assertion) that doctors long used the claimed diagnostic processes." *Id.*

The Court also cautioned against confusing the § 101 inquiry at the Rule 12 stage with invalidity under §§ 102 and 103, noting that "[t]he analysis under *Alice* step one is whether the claims as a whole are 'directed to' an abstract idea, regardless of whether the prior art demonstrates that the idea or other aspects of the claim are known, unknown, conventional, unconventional, routine, or not routine." *Id.* at 1372. Though courts may take judicial notice of a longstanding practice, this

Court cautioned that doing so would require extrinsic evidence that was "overwhelming to the point of being indisputable." *Id.* at 1373-74.

Google's strained analogy to artists restoring paintings therefore carries little weight, where neither Google nor the district court pointed to a single piece of evidence—let alone evidence "overwhelming to the point of being indisputable"—showing that the claims only automate longstanding manual practices. *Id.* at 1373. No evidence suggests that an artist performed the claimed operations using the claimed data types. An artist employed subjective judgment, not correction conditions, or shooting scene information, or location information, or the processing operations using that data—all of which provide objective, and thus improved, processes for adjusting digital image data. Like *McRO* and *CardioNet*, the evidence actually of record here—the patent specifications—describes the claimed techniques as new, improved digital image data adjusting techniques because they incorporate objective data and particular operations to facilitate corrections that produce better results compared to prior techniques. Absent evidence suggesting that humans could otherwise perform the claimed steps in their minds, and in the face of Longitude's unrebutted evidence showing that the claimed techniques improve prior digital image data processing systems, Longitude's claims are patent-eligible.

### C. Longitude's claims do not recite only "functions" or results—they recite how to achieve improved digital image data adjustments based on the image's main object/subject.

Google concludes again and again that the claims recite only functional language, arguing that discrete, individual claim limitations provide insufficient "how." Google dismisses that each claim provides *how* to achieve improved digital image data adjustments based on the image's main object/subject, through the recited operations using the claimed data types. *See* § II, *supra*. "Functional" language alone does not prove ineligibility. The test is whether the recited limitations—interpreted as a whole and in view of their specification—achieve an improved computing result when performed. *See, e.g.*, *McRO*, 837 F.3d at 1313; *Visual Memory*, 867 F.3d at 1261. Longitude's claims pass this test: the claims recite particular operations using particular data, and the specifications explain that those claimed techniques improve digital image processing systems. *See* § II, *supra* (e.g., using correction conditions corresponding to properties of determined main object image data to perform adjustments).

This Court did not articulate a "rule" in Google's cited cases supporting Google's functional language generalizations. For example, in *Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, the claims recited routing information and did not "sufficiently describe how to achieve" those results. 874 F.3d 1329, 1337 (Fed. Cir. 2017). But more important, the claims did not recite the

computing improvement that the specification described. The specification provided that an *unclaimed* embodiment achieved a technological improvement, *not* the claimed "invention." *Id.* at 1338-39. Google cannot say the same about Longitude's claims.

Similarly, in *Hawk Technology Systems, LLC v. Castle Retail, LLC*, the claims recited only "parameters" for displaying and converting video and did not "explain what the claimed parameters are or how they should be manipulated." 60 F.4th 1349, 1357 (Fed. Cir. 2023). But the Court's eligibility analysis did not end there. The patent owner argued that the claims performed "special data conversion," but the Court determined that "the claims themselves do not disclose performing any 'special data conversion' or otherwise describe how the alleged goal of 'conserving bandwidth while preserving data' is achieved." *Id.* Unlike here, the *Hawk* patentee had a problem matching its arguments and its specification to its claims.

The issue in *Two-Way Media*, *Hawk*, and Google's other "functional claiming" cases, then, was that the claims did not provide a computing improvement, and nothing in the record evidence suggested otherwise. *See also In re Gopalan*, 809 F. App'x 942, 944 (Fed. Cir. 2020) ("[N]either the claims nor specification contain any concrete specificity regarding the placement or design of" certain equipment.); *Elec. Power Grp.*, 830 F.3d at 1355 ("Nothing in the

claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information.”).

*Visual Memory*—a case analogous to Longitude’s, based on the *evidence*—shows why Google’s generalizations are wrong. There, the Court determined that computer memory claims were patent-eligible because the specification confirmed that the claims provided a computing improvement. The claims recited seemingly generic structures, including a main memory and cache connected to a bus, where “a programmable operational characteristic of said system determines a type of data stored by said cache.” *Visual Memory*, 867 F.3d at 1257. Nothing in the claim language itself described *how* to make this determination, and the district court granted the defendant’s Rule 12(b)(6) motion, concluding that the programmable operational characteristics “represent[ed] generic concepts . . . and the patent fail[ed] to explain the mechanism for accomplishing the result.” *Id.*

Yet this Court reversed, because the claims—in view of the specification—were directed to a technological improvement: an “enhanced computer memory system.” *Id.* at 1259. Rejecting the appellee’s arguments (which Google now echoes) that the claims were “directed to no more than ‘a desired result or outcome,’” the Court concluded that a memory system configured to store a type of data in the cache memory based on the type of processor *was* the technological

improvement needed at step one. *Id.* at 1260. The Court credited the specification's teachings of multiple, particular benefits that "flow[ed] from the [] patent's improved memory system" and of performance improvements over the "one-size-fits-all" prior art approach. *Id.* at 1259. The Court observed that its holding was "particularly proper on a motion to dismiss under Rule 12(b)(6), where all factual inferences drawn from the specification must be weighed in favor of . . . the non-moving party." *Id.* at 1261-62.

The same evidentiary standard applies here, and the specifications compel the same conclusion: Longitude's claims, understood in view of their specifications, recite specific computing improvements to prior digital image data adjusting techniques and, importantly, *how* to produce improved results.

- Claim 32 of the '365 patent and claim 3 of the '574 patent recite *how* to achieve adjustments that are "more responsive to variations in main objects" (Appx026 at 1:30-40): by performing specific operations using new data—correction conditions corresponding to properties of determined main object image data.
- Claim 10 of the '056 patent recites *how* to "correct the color balance according to the specific subject characteristic" (Appx085 at 2:1-3): by determining the image's subject using pixel values and position data related to a target area, calculating a specific subject

characteristic value, and calculating and using a correction value based on the specific subject characteristic value and a preset characteristic target value.

- Claim 1 of the '109 patent recites *how* to achieve improved emphasis region accuracy: by using a digital image file containing shooting scene information and location information of the person in the image data.

Longitude's claims—like the claims in *Visual Memory* (and *Enfish*, *McRO*, *CardioNet*, *CosmoKey*, and others)—are patent-eligible. As in *Visual Memory*, the district court erred here when it dismissed claim language that it deemed ends-oriented, after considering the claim language in isolation and without analyzing the specification to understand what Longitude's claims are directed to or the problems that the inventors looked to solve. The claims and specifications demonstrate that Longitude's claims are directed to distinct computing improvements, not abstract ideas. The specifications describe prior computing processes and their limits, the differences between those prior computing processes and the claimed ones, and the technical benefits flowing from those differences. The claimed computing processes achieve improved digital image quality. The evidence justifies reversal of the district court's ineligibility findings under *Alice* step one and step two.

## CONCLUSION

Longitude requests that the Court reverse, under either *Alice* step one or step two, the district court's ineligibility findings and corresponding dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, Longitude requests that the Court vacate the district court's ineligibility findings and reverse dismissal.

Dated: April 22, 2024

Respectfully submitted,

/s/ Aaron R. Fahrenkrog
Aaron R. Fahrenkrog
Emily J. Tremblay
Samuel J. LaRoque
William Jones
ROBINS KAPLAN LLP
800 LaSalle Avenue
Suite 2800
Minneapolis, MN 55402-2015
Tel: (612) 349-8500

*Counsel for Plaintiff-Appellant Longitude Licensing Ltd.*

**CERTIFICATE OF SERVICE**

I certify that on April 22, 2024, I electronically filed this document, Appellant Longitude Licensing Ltd.'s Reply Brief, with the Clerk of the Court using CM/ECF, which will automatically send email notification of such filing to the following counsel of record:

Ginger D. Anders
Ginger.Anders@mto.com
J. Kain Day
Kain.Day@mto.com
Munger, Tolles & Olson LLP
601 Massachusetts Ave. NW, Suite 500E
Washington, DC 20001
(202) 220-1107

/s/ Aaron R. Fahrenkrog
Aaron R. Fahrenkrog

*Counsel for Plaintiff-Appellant Longitude Licensing Ltd.*

## CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

I certify that the foregoing reply brief complies with the relevant type-volume limitations of the Federal Rules of Appellate Procedure and Federal Circuit Rule 32(b)(1) because the filing includes 6,891 words, excluding the items enumerated in Federal Circuit Rule 32(b)(2).

Dated: April 22, 2024

/s/ Aaron R. Fahrenkrog
Aaron R. Fahrenkrog

*Counsel for Plaintiff-Appellant Longitude Licensing Ltd.*