NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LONGITUDE LICENSING LTD.,**
*Plaintiff-Appellant*

**v.**

**GOOGLE LLC,**
*Defendant-Appellee*

---

2024-1202

---

Appeal from the United States District Court for the Northern District of California in No. 3:23-cv-03046-VC, Judge Vince Chhabria.

---

Decided: April 30, 2025

---

AARON ROBERT FAHRENKROG, Robins Kaplan LLP, Minneapolis, MN, argued for plaintiff-appellant. Also represented by WILLIAM JONES, SAMUEL J. LAROQUE, EMILY TREMBLAY.

GINGER ANDERS, Munger, Tolles & Olson LLP, Washington, DC, argued for defendant-appellee. Also represented by J. KAIN DAY.

---

Before LOURIE, DYK, and CHEN, *Circuit Judges*.

DYK, *Circuit Judge*.

Longitude Licensing Ltd. ("Longitude") sued Google LLC ("Google") in the Northern District of California, alleging infringement of claims of U.S. Patents Nos. 7,668,365 (the "'365 patent"), 8,355,574 (the "'574 patent"), 7,454,056 (the "'056 patent"), and 7,945,109 (the "'109 patent"), all owned by Longitude. The district court dismissed the complaint on the ground that the asserted claims are not patent eligible under 35 U.S.C. § 101. *See Longitude Licensing Ltd. v. Google, LLC*, No. 23-CV-03046-VC, 2023 WL 7109896, at *2 (N.D. Cal. Oct. 27, 2023) ("*Dismissal*"). We *affirm*.

## BACKGROUND

The four patents at issue are directed to performing digital image correction techniques on a computer. The '574 patent is a continuation of the '365 patent, and the two share a title and specification; the specifications of the '056 and '109 patents are not significantly different from that shared specification. The specifications describe identifying the subject, or "main object," of an image and adjusting the main object image data by using "correction conditions," which include any kind of "statistical values and color values" that correspond to the "properties" of the main object. *See* '365 patent, col. 14 ll. 51–58; *see also* '574 patent, col. 14 ll. 53–59; '056 patent, col. 5 ll. 33–36, 53–59; '109 patent, col. 9 l. 65–col. 10 l. 6.

On June 21, 2023, Longitude sued Google for infringement of claims of the four patents.[1] Google filed a motion

[1] Longitude also accused Google of infringing three other patents that Google did not address in its motion to dismiss. Those other patents are not at issue in this appeal

to dismiss, arguing that the claims of the four patents are "directed to an abstract idea that merely uses computers as a tool." J.A. 256. Google treated claim 32 of the '365 patent as representative.

The '365 patent is titled "Determination of Main Object on Image and Improvement of Image Quality According to Main Object." Claim 32 of the '365 patent recites:

> 32. An image processing method comprising:
>
> > determining the main object image data corresponding to the main object characterizing the image;
> >
> > acquiring the properties of the determined main object image data;
> >
> > acquiring correction conditions corresponding to the properties that have been acquired; and
> >
> > adjusting the picture quality of the main object image data using the acquired correction conditions;
> >
> > wherein each of the operations of the image processing method is executed by an integrated circuit.

*Id.* at col. 32 ll. 23–33. The '365 patent acknowledges that human users could previously "adjust picture quality using retouching software," *id.* at col. 1 ll. 14–15, but states that already existing "automatic picture quality adjusting techniques[] . . . [apply changes] across the board, without taking into consideration subtle differences in the main object characterizing the image," *id.* at col. 1 ll. 30–33.

---

and were voluntarily dismissed without prejudice by Longitude before the district court.

On October 27, 2023, the district court granted the motion to dismiss. The district court also treated claim 32 as representative and held that all the claims were directed to the same abstract idea without supplying an inventive concept, concluding that "the claim language in all four patents is functional and ends-oriented" and that it "need not credit Longitude's conclusory allegations in the complaint that the claims 'recite a specific way to improve a prior computing process' when that is not apparent from the claim language read in light of the specification." *Dismissal* at *1 (quoting J.A. 284).

Longitude timely filed this appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## Discussion

We review the grant of a motion to dismiss de novo. *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360 (Fed. Cir. 2023). Patent eligibility is a question of law that we review de novo. *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012).

Section 101 defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has explained that there are certain "implicit" exceptions in § 101, namely, laws of nature, natural phenomena, and abstract ideas. *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013). To determine whether a patent claim is subject matter ineligible, we apply the two-step *Alice* framework. *Alice Corp. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014); *see also Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 77–80 (2012). At step one, we "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 573 U.S. at 217. At step two, we "consider

the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 566 U.S. at 78–79).

I

At *Alice* step one, the district court held that the claims are drawn to the abstract idea of "improving image quality by adjusting various aspects of an image based on features of the main object in the image." *Dismissal* at *1. We agree.

A

We have repeatedly held that claims that organize, alter, or manipulate data, without more, are patent ineligible. *See Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1368 (Fed. Cir. 2024) (collecting cases); *see also Intell. Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340–41 (Fed. Cir. 2017); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350–51 (Fed. Cir. 2014). Claims that merely implement longstanding activities and mental processes using new data and generic computing components without explaining how these arrangements actually result in the claimed improvement are similarly directed to unpatentable abstract ideas. *See, e.g.*, *Trinity*, 72 F.4th at 1361–62; *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019).

Such is the case here. The specification recognizes that users could already "adjust picture quality using retouching software" and that "accurate adjustment of picture quality requires experience and familiarity." '365 patent, col. 1 ll. 13–17. Claim 32 of the '365 patent merely uses a computer to adjust parameters associated with the main

object data (rather than data of the entire image, an approach previously undertaken by humans) without explaining how this result is achieved.

Longitude argues that claim 32 is directed to an improved digital image processing technique: "how to more accurately adjust th[e] main object image data by using correction conditions corresponding to that data's properties." Appellant's Br. 6. The problem is that nothing in the language of claim 32 in this respect does anything more than describe the use of new data or explain how it is used in the steps of "determining" the main object, "acquiring" its properties, "acquiring correction conditions," and "adjusting" the picture quality. '365 patent, col. 32 ll. 23–33. Claim 32 is similar to those found to be patent ineligible in *Hawk Technology Systems, LLC v. Castle Retail, LLC*, 60 F.4th 1349 (Fed. Cir. 2023), and *Recentive Analytics, Inc. v. Fox Corp.*, No. 2023-2437, 2025 WL 1142021 (Fed. Cir. Apr. 18, 2025).

In *Hawk*, the claims involved methods of viewing multiple simultaneously displayed and stored video images based on sets of "temporal and spatial parameters associated with each image." 60 F.4th at 1353. We explained that these claims were directed to an abstract idea because they merely recited a method of "receiving, displaying, converting, storing, and transmitting digital video 'using result-based functional language.'" *Id.* at 1357 (quoting *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017)). We rejected Hawk's argument, similar to Longitude's argument here, that the use of "parameters" made the claims not abstract, since the claims did not "explain what those claimed parameters are or how they should be manipulated." *Id.* at 1357 (citation omitted); *see also Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 703 (Fed. Cir 2023) (holding unpatentable claims directed to using a computer as "a tool to identify when a condition is met and then to distribute information

based on satisfaction of that condition"). Similarly, claim 32 describes "determining" a main object, "acquiring" the main object image data and correction conditions, and "adjusting" the main object image data's parameters without "sufficient recitation of how the purported invention improve[s] the functionality" of image correction methods. *Hawk*, 60 F.4th at 1358 (alteration in original) (quoting *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1152 (Fed. Cir. 2019)).

In *Recentive*, the claims were directed to the application of machine learning for determining event schedules and generating network maps for broadcasters. 2025 WL 1142021, at *1. The claims generally involved methods comprising collecting data, using the data to train the machine learning model, and updating the event schedules and network maps. We rejected the patentee's argument that "its patents are eligible because they apply machine learning to [a] new field of use," explaining that merely adapting existing technology to a novel data environment does not create patent eligibility. *Id.* at *6. We concluded that even if there had been a claim of "a technological improvement, neither the claims nor the specifications describe how such an improvement was accomplished." *Id.* at *5. Here, too, Longitude urges that the use of new data (e.g., the correspondence between the main object data and correction conditions) represents a patent-eligible technological improvement. Because the claim "functionally describes a mere concept without disclosing how to implement that concept," *id.*, we agree with the district court that it is directed to a patent-ineligible abstract idea.

Longitude repeatedly faults the district court for ostensibly failing to consider claim 32 in light of the patent specification, seeking to analogize its claims to those found to be patent eligible in *McRo, Inc. v. Bandai Namco Games of America Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016). Longitude argues that "[a]s in *McRo*, the intrinsic record . . .

shows that claim 32 is directed to an improved computing process" because "[l]ike the claimed 'rules' in *McRo*, [the claims'] correction conditions . . . provide how the claimed process improves upon prior automated image adjustment processes." Appellant's Br. 37–38 (internal quotation marks omitted). But in *McRo*, we stressed that the language of the claims themselves was "limited to rules with specific characteristics." 827 F.3d at 1313.

Here, claim 32 is framed entirely in functional, results-oriented terms, and Longitude effectively asks us to import disclosures from the specification into the claim so that it provides the same degree of specificity as those in *McRo*. This we decline to do. While step one requires that "we consider the claims in light of the specification[,] [we] avoid importing concepts from the specification into the claims." *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024); *accord ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019) (explaining that reliance on the specification "must always yield to the claim language in identifying th[e] focus" of the claims); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101 inquiry must focus on the language of the Asserted Claims themselves."); *In re TLI Commc'ns Patent Litig.*, 823 F.3d 607, 611–12 (Fed. Cir. 2016) (similar). The specific improvement purportedly recited in claim 32 does not make it non-abstract because the language of the claim does not explain how that improvement is achieved.

B

Longitude apparently faults the district court for failing to consider a "distinct" improvement in digital image processing techniques: "how to more accurately identify the main object—meaning, what the image is a picture of—in digital image data by analyzing image and position data." Appellant's Br. 6. This concept appears in claim 32's

limitation of "acquiring the properties of the determined main object image data." '365 patent, col. 32 ll. 26–27. Longitude argues that claim 5 of the '365 patent is more explicitly directed to this improvement:

> 5. An image processing device that determines the main object which characterizes an image, the image processing device comprising:
>
> > image data acquiring module that acquires image data which is data of the target image;
> >
> > image data analyzing module that segments the image data into a plurality of areas for analysis in terms of area units;
> >
> > position data acquiring module that acquires position data of the areas of the image data; and
> >
> > main object determining module that determines the main object using the acquired position data and the results of analysis;
> >
> > wherein each of the modules of the image processing device is executed by an integrated circuit.

*Id.* at col. 28 ll. 33–48. This argument fails for substantially the same reasons as Longitude's argument as to claim 32.

Like claim 32, claim 5 merely identifies a number of components defined in functional terms that carry out basic data collection and manipulation functions. The claim purportedly identifies the technical improvement of more efficiently locating the subject of an image without actually explaining how this process is achieved other than stating that the new data is used in identifying the main

object. *See Hawk*, 60 F.4th at 1358. We conclude that the invention recited in claim 5 is directed to the same class of abstract data manipulation as claim 32. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).

C

Longitude also argues that the district court "oversimplif[ied]" the claims by treating claim 32 as representative instead of addressing each claim individually. *See* Appellant's Br. 59. We have already addressed claim 5 in the preceding section. Because the other claims asserted by Longitude were "substantially similar and linked to the same abstract idea" claimed by claims 5 and 32, we conclude that the court was not required to address all sixty-six claims in its order dismissing Longitude's complaint. *Content Extraction*, 776 F.3d at 1348 (citation omitted).

The other claims differ from claims 5 and 32 only insofar as they recite additional limitations on what is meant by the "main object" and "correction conditions." Claim 3 of the '574 patent, for example, simply limits the "main object" to a "human face" and limits the "correction conditions" to a set of well-known parameters including "a highlight, a shadow, brightness, color balance, or memory color." '574 patent, col. 28 ll. 17–18.[2] The '056 patent's

---

[2] Claim 3 recites:

> 3. A method of image processing, the method comprising:
>
> > determining a main object in an image generated by an image generating apparatus, wherein the main object includes at least a human face, and wherein the determining of the main object is implemented by

claims are directed to image correction techniques involving color balance correction. Like the ’365 patent, the ’056 patent identifies the problem in the prior art as image correction being applied “for the overall image,” which leads to “the risk of making an undesirable change to the color tone of a specific [human] subject.” ’056 patent, col. 1 ll. 28–35. In place of claim 32’s main object, the claims of the ’056 patent are directed to a “specific subject area.”[3]

---

> determining whether the image includes the human face; and
>
> adjusting image quality of the main object using correction conditions corresponding to properties of the determined main object, wherein a parameter used in adjusting the image quality is a highlight, a shadow, brightness, color balance, or memory color;
>
> wherein each operation of the method of image processing is executed by one of a person computer, a printer, or a display device.

’574 patent col. 28 ll. 8–21.

[3] Claim 10 is representative:

> 10. An image processing device for executing color balance correction on image data of a photographed image, said image processing device comprising:
>
> > an image data acquisition module that acquires said image data;
> >
> > a specific subject area determination module that determines a specific subject area in said photographed image, wherein said specific subject area contains a specific subject in said photographed image, and

The claims of the ’109 patent similarly relate to locating a human subject of the image and processing that image data in that area, reciting the same abstract idea as claim 5 of the ’365 patent. The claims merely replace the ’056 patent claims’ specific subject area with using shooting scene information and location information in the image data to

---

> wherein said specific subject area determination module determines said specific subject area using pixel values of pixel data included in a target area for determination, and a position of said target area in said photographed image;
>
> a specific subject characteristic value calculation module that calculates a specific subject characteristic value, wherein said specific subject characteristic value represents a characteristic of image data corresponding to said determined specific subject area;
>
> a correction value calculation module that calculates a correction value for color balance correction using said calculated specific subject characteristic value and color balance a preset characteristic target value; and
>
> a correction execution module that executes said color balance correction on said image data using said calculated correction value.

’056 patent, col. 16 ll. 32–56.

detect the "location information of a person," and focus on adjusting the sharpness of the location information.[4]

Ultimately, the problem for Longitude is that each claim actually is directed to the same abstract idea of using data to identify an image's subject and modifying image data based on that subject. None of the claims describes how these results are achieved. The court was not required to separately address these "trivial variations of the abstract idea" claimed by the '365 patent. *Trinity*, 72 F.4th at 1362.

## II

The district court concluded at *Alice* step two that the claims lack any inventive concept. *Dismissal* at *1. We

---

[4] Claim 1 is representative:

> 1. An image processing apparatus comprising:
>
> > a CPU, the CPU executing functions including
> >
> > > acquiring an image file, the image file including image data, shooting scene information, and location information of a person in the image data, and
> > >
> > > increasing sharpness of an area in which the person is located and decreasing sharpness of an area in which the person is not located based on the acquired location information when the acquired shooting scene information indicates a portrait scene.

'109 patent, col. 14 l. 63–col. 2 l. 4.

agree and find neither of Longitude's arguments to the contrary persuasive.

First, Longitude argues that the district erred by finding a lack of inventive concept "without evidence or analysis," casting this inquiry as a "fact finding." Appellant's Br. 41. But the absence of an inventive concept does not necessarily entail subsidiary factual determinations, and a patent itself may establish that the claims contain no inventive concept. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). That is the case here: Longitude fails to identify any relevant factual dispute, and the claims do not recite any inventive concept.

Second, Longitude argues that "the intrinsic evidence demonstrates that the claimed steps addressing 'properties' of main object image data and 'correction conditions corresponding to [those] properties' recite inventive concepts." Appellant's Br. 40–41 (alteration in original) (citation omitted). But adjusting the main object image data's properties according to a set of correction conditions is the same abstract idea we identified at step one above. These elements cannot transform "that idea into significantly more." *Broadband*, 113 F.4th at 1370; *accord BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).

## CONCLUSION

We have considered Longitude's remaining arguments and find them unpersuasive. Because the claims of the four patents are not patent eligible under § 101, we *affirm*.

**AFFIRMED**